WMX TECHNOLOGIES, INC., a Delaware corporation; Waste Management of California, Inc., a California corporation, Plaintiffs–Appellants,

v.

Edwin L. MILLER, Jr., as District Attorney of San Diego County, California, Defendant–Appellee.

No. 97–55336.

United States Court of Appeals, Ninth Circuit.

Submitted Aug. 26, 1999 [1]

Filed Sept. 2, 1999

1. The court, having heard oral argument on the merits of this case prior to dismissing for lack of jurisdiction, unanimously finds this case suitable for decision without further oral argument. *See* Fed. R.App. P. 34(a) and 9th Cir. R. 34–4.

Robert H. Friebert, Friebert, Finerty & St. John, Milwaukee, Wisconsin, and David J. Zubkoff, Seltzer, Caplan, Wilkins & McMahon, San Diego, California, for the plaintiffs-appellants.

Morris G. Hill, Office of the County Counsel, San Diego, California, for the defendant-appellee.

Before: HUG, Chief Judge, BROWNING, SCHROEDER, BRUNETTI, NOONAN, LEAVY, TROTT, FERNANDEZ, RYMER, KLEINFELD, and THOMAS, Circuit Judges.

HUG, Chief Judge:

The Board of Supervisors of San Diego County, in order to evaluate plaintiffs' application for permits to develop a landfill site, directed the district attorney to conduct an investigation of the applicant and to render a report to the Board. This case involves an action by the plaintiffs under 42 U.S.C. § 1983 against the district attorney in his official capacity, alleging that statements in the report were defamatory and deprived the plaintiffs of property and liberty without due process of law. Plaintiffs also assert that their First and Fourteenth Amendment rights to petition the Government were violated. The district court dismissed the action under Federal Rule of Civil Procedure 12(b)(6). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I.

### BACKGROUND

WMX Technologies, Inc., formerly known as Waste Management, Inc., is a holding company that owns and operates entities that collect, store, and dispose of solid and liquid wastes. Waste Management of California, Inc., a wholly owned subsidiary of Waste Management, Inc., proposed to develop and operate a new landfill site in San Diego County (in this appeal we refer to the plaintiffs collectively as "Waste Management."). In November 1990, Waste Management applied to the San Diego County Board of Supervisors ("Board") for the necessary use permits.

The Board unanimously voted to authorize San Diego County Supervisor Susan Golding to request District Attorney Edwin Miller to investigate allegations of improprieties by Waste Management, Inc., and its operating subsidiaries. In her letter to Miller, she stated:

Some of the specific concerns that have been brought to my attention include:

- Allegations of price-fixing and other antitrust violations.
- Allegations of criminal conduct.
- Allegations of environmental contamination and illegal dumping of toxic and hazardous material.
- Allegations of inadequate liability insurance held by WMI on their municipal and hazardous · waste operations.
- Allegations of organized crime connections.

On April 1, 1992, Miller's Final Report was sent to the Board and disclosed to the press. It contained the following sections:

I.   Introduction
II.   Company History
III.   Environmental Problems
IV.   Significant Environmental Cases
V.   Organized Crime Connections
VI.   Public Corruption
VII.   Anti–Trust and Unfair Business Practices
VIII.   Waste Management, Inc., in San Diego
IX.   Conclusion

In response to the report, Waste Management instituted this action under 42 U.S.C. § 1983 against Miller in his official capacity as the District Attorney of San Diego County.

The complaint alleges that Section V of the Report contained a conclusion that Waste Management is connected to organized crime and attaches, as Exhibit C, to the complaint a copy of Section V of the Report. An examination of Exhibit C reveals that there is no statement in Section V that reaches such a conclusion. Waste Management's brief clarifies the basis for its contention to be that "[t]he *title* of Section V, 'Organized Crime Connections,' is a conclusory statement that Waste Management, Inc., is connected to organized crime. The contents of the section contain the defendant's support for the conclusion."

Section V of the complaint does trace some early history, from 1960 to 1984, of lawsuits, Justice Department actions, and Congressional hearings concerning persons, subsidiaries, and organizations merged into Waste Management, Inc., that may have had some connections with organized crime. There was no statement in Section V that Waste Management, Inc., or its subsidiaries had any current connections with organized crime. It is only if the heading of the section can be considered a "conclusion" that Section V of Miller's Final Report can be construed to conclude that there exists any current connection to organized crime. Another reasonable inference is that the heading "Organized Crime Connections" is merely a heading to the discussions of one of the subject areas of investigation requested by Susan Golding, similar to the other headings of the report.

Other portions of the Final Report under separate headings were critical of environmental violations, public corruption, antitrust violations, and unfair business practices. The ultimate conclusion to the Final Report in Section IX, although critical of these other areas, does not mention any connection with organized crime. It stated:

Waste Management, Inc.'s, methods of doing business and history of civil and criminal violations has established a predictable pattern which has been fairly consistent over a significant number of years. The history of the company presents a combination of environmental and anti-trust violations and public corruption cases which must be viewed with considerable concern. Waste Management has been capable of absorbing

enormous fines and other sanctions levied against it while still maintaining a high earnings ratio. We do not know whether these sanctions have had any punitive effect on the company or have merely been considered as additional operating expenses.

We have reviewed recent practices and problems and our concerns have not diminished. The company's recent business practices and violations do not appear to be different from the past. We have been unable to determine whether Waste Management's history, as reflected by this report, has been due to a failure of proper management, or has been the result of deliberate corporate policy. Whatever the case, the company's history requires extreme caution by the San Diego County Board of Supervisors or any other governmental entity contemplating any contractual or business relationship with Waste Management.

The complaint seeks relief only with regard to Section V, "Organized Crime Connections." No relief is sought with regard to the other portions of the report that were critical of antitrust and environmental violations, public corruption cases, and unfair business practices by Waste Management, Inc. The complaint seeks only declaratory and injunctive relief.

Waste Management requests a declaration that Miller's actions in preparing and issuing the part of the report entitled "Organized Crime Connections" violated Waste Management's rights under the First, Fifth, and Fourteenth Amendments and that the portions of the report referring to organized crime are invalid. Waste Management also request that (1) Miller be ordered to cease and desist from further circulation and dissemination of the portions of the report referring to organized crime, (2) a continuing and permanent obligation be imposed on Miller to retrieve parts of the report referring to organized crime whenever and wherever they have been disseminated including an obligation to take further action anywhere in the world as may be requested by plaintiffs on approval by the court, and (3) Miller be ordered to destroy those parts of the report he retrieves and deliver satisfactory proof of such destruction on a continuing basis to the court.

The complaint alleges that Section V of the Report damaged Waste Management's "honor and reputation" and business goodwill, and that Miller intended this effect. The complaint asserts that Miller's dissemination of the report deprived Waste Management of their liberty and property interests without due process of law, as well as violating their First Amendment right to petition the Government. Specifically, the complaint sets forth the following claims for relief:

1. The defendant deprived plaintiffs of their business goodwill, a legislatively created property interest in California, without due process of law;

2. The defendant deprived plaintiffs of liberty by stigmatizing them "plus" distinctly altering their property interest in their business goodwill without due process;

3. The defendant violated plaintiffs' First Amendment right to petition the Government;

4. The defendant deprived plaintiffs of liberty by stigmatizing it in connection with the exercise of their First Amendment right to petition the Government; and

5. The defendant deprived plaintiffs of liberty by making an official and public adjudication of criminal activity.

The district court dismissed the Waste Management's First Amended Complaint for failure to state a claim upon which relief could be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Claims one, two, and five were dismissed with prejudice, while claims three and four were dismissed with leave to amend within thirty days. Waste Management neither took advantage of the opportunity to

amend nor informed the district court that they would do so. Instead, on the thirtieth day, they filed a notice of appeal without obtaining a separate judgment of the district court dismissing all five claims with prejudice.

A divided three-judge panel affirmed. The panel concluded that it had jurisdiction over the appeal because "the plaintiffs elected to stand on the complaint and appeal rather than amend." *WMX Tech., Inc. v. Miller*, 80 F.3d 1315, 1318 (9th Cir.1996) (citing *Carson Harbor Village Ltd. v. City of Carson*, 37 F.3d 468, 471 n. 3 (9th Cir.1994)). We took the case en banc. *WMX Tech., Inc. v. Miller*, 99 F.3d 289 (9th Cir.1996). We dismissed the appeal for want of jurisdiction, holding that when a district court expressly grants leave to amend the complaint, the judgment is not final; final judgment must be obtained before the case becomes appealable. *WMX Tech., Inc. v. Miller*, 104 F.3d 1133, 1136–37 (9th Cir.1997) (en banc).

The parties then returned to the district court and obtained a final judgment, and we have appellate jurisdiction. We must now decide the substantive legal issues which we did not reach in our prior en banc decision.

## II.

### STANDARD OF REVIEW

■ We review the district court's dismissal for failure to state a claim *de novo*. *Cohen v. Stratosphere Corp.*, 115 F.3d 695, 700 (9th Cir.1997). In doing so, we accept the plaintiffs' allegations of material fact as true and view them in the light most favorable to the nonmoving party. *Federation of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir.1996).

## III.

### DISCUSSION

To state a cause of action under § 1983, a plaintiff must "plead that (1) the defen-

dants acted under color of state law and (2) deprived plaintiff of rights secured by the Constitution or federal statutes." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir.1986). Paragraph 8 of the complaint alleges that Miller acted under color of state law. The question that remains is whether the facts alleged state a claim that Waste Management has been deprived of constitutionally protected rights.

### A. Right to Petition the Government

In its third claim for relief, Waste Management alleges that the Organized Crime Connections' conclusion contained in the report and the report's public dissemination deprived Waste Management of California, Inc., of its right to petition the Government guaranteed by the First and Fourteenth Amendments of the United States Constitution because it (1) was intended to impair and did impair its ability to obtain a use permit for its proposed landfill, (2) was intended to retaliate and did retaliate against it for exercising its First Amendment right to petition the Government, and (3) was intended to chill and did chill its First Amendment right to petition the Government.

■ The First Amendment provides in relevant part that "Congress shall make no law ... abridging ... the right of the people ... to petition the Government for a redress of grievances." U.S. Const. amend. I. Waste Management of California, Inc.'s, application for a major use permit is not equivalent to a petition to the Government for redress of grievances under the First Amendment. The protections afforded by the Petition Clause have been limited by the Supreme Court to situations where an individual's associational or speech interests are also implicated. *See McDonald v. Smith*, 472 U.S. 479, 482–85, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985) (describing the right to petition as "cut from the same cloth" as the other expressive rights embodied in the First Amendment and holding that a petition clause claim must implicate some first

amendment right); *United Mine Workers of America v. Illinois State Bar Ass'n,* 389 U.S. 217, 222–23, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967) (extending First Amendment Petition Clause protection to unions who provided collective legal services because services were undertaken to secure meaningful access to the courts, which implicated the First Amendment associational interests); *NAACP v. Button,* 371 U.S. 415, 430–31, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963) (holding that NAACP's financing of litigation was a form of political expression and thus protected under the Petition Clause). An application for a major use permit implicates neither Waste Management's associational nor speech interests. Because Waste Management's application does not amount to a petition to "the Government for a redress of grievances" under the First Amendment, its third claim must fail.

## B. *The Due Process Rights*

■ In the first, second, fourth, and fifth claims for relief, Waste Management contends their due process rights were violated. The procedural due process rights of the Fourteenth Amendment apply only when there is a deprivation of a constitutionally protected liberty or property interest. *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The essence of all of these claims is that the Waste Management's reputation was damaged and that under various theories this constituted a deprivation of a protected property or liberty interest without due process of law.

The Supreme Court made clear in *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) that reputation alone is not an interest protected by the Constitution. "The words 'liberty and property,' as used in the Fourteenth Amendment do not in terms single-out reputation as a candidate for special protection over and above other interests that may be protected by state law." *Id.* at 701, 96 S.Ct. 1155. The Court confirmed in *Siegert v. Gilley,* 500 U.S. 226, 233–34, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) that there is no constitutional protection for the interest in reputation.

In *Paul v. Davis,* Davis had been arrested for shoplifting, but the charge was dismissed. However, the police distributed to area merchants a flyer of active shoplifters with Davis' name and picture in the flyer. Davis brought an action under 42 U.S.C. § 1983 against the police chiefs that had distributed the flyer alleging that their action was under color of state law and deprived him of his constitutional rights. The Court stated, "His complaint asserted that the active shoplifter designation would inhibit him from entering business establishments for fear of being suspected of shoplifting and possibly apprehended, and would seriously impair his future employment opportunities. Accepting that such consequences may flow from the flyer in questions, [Davis'] complaint would appear to state a classical claim for defamation, actionable in the courts of virtually every State." *Id.* at 697, 96 S.Ct. 1155. However, the Court held that the defendants in that case were not liable to Davis under § 1983. The Court stated:

It is apparent from our decisions that there exists a variety of interests which are difficult of definition but are nevertheless comprehended within the meaning of either "liberty" or "property" as meant in the Due Process Clause. These interests attain this constitutional status by virtue of the fact that they have been initially recognized and protected by state law, and we have repeatedly ruled that the procedural guarantees of the Fourteenth Amendment apply whenever the State seeks to remove or significantly alter that protected status.

*Id.* at 710–11, 96 S.Ct. 1155 (footnote omitted).

The Court then noted two cases where a state right or status was removed or significantly altered, one involving the withdrawal of a driver's license, the other revocation of parole status, and continued.

In each of these cases, as a result of the state action complained of, a right or status previously recognized by state law was distinctly altered or extinguished. It was this alteration, officially removing the interest from the recognition and protection previously afforded by the State, which we found sufficient to invoke the procedural guarantees contained in the Due Process Clause of the Fourteenth Amendment. But the interest in reputation alone which respondent seeks to vindicate in this action in federal court is quite different from the "liberty" or "property" recognized in those decisions. Kentucky law does not extend to respondent any legal guarantee of present enjoyment of reputation which has been altered as a result of petitioners' actions. Rather, his interest in reputation is simply one of a number which the State may protect against injury by virtue of its tort law, providing a forum for vindication of those interests by means of damages actions. And any harm or injury to that interest, even where as here inflicted by an officer of the State, does not result in a deprivation of any "liberty" or "property" recognized by state or federal law, nor has it worked any change of respondent's status as theretofore recognized under the State's laws. For these reasons, we hold that the interest in reputation asserted in this case is neither "liberty" nor "property" guaranteed against state deprivation without due process of law. *Id.* at 711–12, 96 S.Ct. 1155.

### 1. *Property Interest*

■ With regard to the property interests, the Waste Management alleged damage to their business reputation. We assume for purposes of this appeal, "that the historical review from 1968 to 1984," under Section V of the Report and its inclusion under the heading, "Organized Crime Connections," is damaging to Waste Management's business reputation. Waste Management contends that damaging their reputation is equivalent to depriving them of the goodwill of their business and that business goodwill is a legislatively created property interest in California.[2]

■ The California Business & Professions Code, § 14100, provides, "the 'good will' of a business is the expectation of continued public patronage." California Business & Professions Code, § 14102, provides, "the good will of a business is property and is transferable." Essentially, the goodwill of a business is its value as a going concern and is made up of many factors, such as location, patronage of customers, relations with suppliers, experience of employees, effectiveness of management, and many other factors. Reputation is not the equivalent of the goodwill of a business. Damage to reputation may affect the goodwill of a business, just as it may affect the future employability of a person.

*Paul v. Davis* clearly announced that reputation, without more, is not a protected constitutional interest. Davis, the plaintiff, had alleged rather serious damage from erroneously including his name and picture in the police flyer to merchants, naming active shoplifters, both as to future employment possibilities and to the way he would be treated by the merchants. Yet, the Court held that this resulting damage would be appropriate for a state tort action, but not for a § 1983 action. The question then becomes whether damage to reputation is to be treated differently because the damage affects the person's business. Would the result have been different in *Paul v. Davis* had Davis been the proprietor of a clothing store? Would the damage to his reputation, as it affected his business, be redressable under § 1983, simply because reputation can be classified as affecting the goodwill of his

---

**2.** Waste Management does not contend that California affords any protection for reputation itself as a liberty or property interest, apart from its association with business goodwill.

business? This would be contrary to the basic thrust of *Paul v. Davis.*

In this case, Miller's Final Report did not deprive the Waste Management, Inc., of its goodwill or any state right or status. Arguably it damaged its reputation and could affect its business relations with others and thus the goodwill of the business. This would present a classic case for a state court defamation action, but not an action under § 1983.

As the Supreme Court noted, the Fourteenth Amendment is not "a font of tort law to be superimposed on whatever systems may already be administered by the States." *Paul,* 424 U.S. at 701, 96 S.Ct. 1155. It stressed, in the context of *Paul v. Davis,* the extent to which federal law could subsume state tort law if § 1983 were to be construed to allow damage to personal reputation without more to be brought as a federal action.[3] The same is true if damage to the reputation of a business were to be construed as a "deprivation" of goodwill and thus a proper action under § 1983. Any adverse statement made by a city, county, or state official in the context of considering building permits, licenses, zoning, or similar activities could potentially constitute damage to business reputation and, thus, goodwill.

Waste Management relies on our decision in *Soranno's Gasco v. Morgan,* 874 F.2d 1310 (9th Cir.1989). There we held that a California statute conferred proper-ty status to business goodwill, and that the owner could not be deprived of it without due process. *Id.* at 1316. Waste Management's reliance on our decision in *Soranno's Gasco* is misplaced. In that case, county officials suspended Soranno's Gasco's bulk permits and sent letters to "Gasco's customers informing them that Gasco's bulk plant permits were suspended and that Gasco could not lawfully deliver gasoline while under suspension." *Id.* at 1313. The letters also threatened to revoke the customers' permits if the customers continued to receive gasoline from Soranno's Gasco. *Id.* Soranno's Gasco brought an action under § 1983, alleging that county officials deprived them of their property interest in business goodwill.

Waste Management, Inc.'s, alleged injury to their business goodwill does not go beyond injury to its business reputation. *Soranno's Gasco* clearly involved much more than an injury to the reputation of a business. It involved actual, direct interference with business goodwill by the county officials through letters sent directly to Soranno's Gasco's customers. The county officials threatened to revoke the operating permits of customers who continued to accept deliveries of petroleum from Soranno's Gasco. *Id.* at 1313. As previously noted, California's statutory definition of goodwill is "the expectation of continued public patronage." The county officials directly deprived Soranno's Gasco

---

**3.** The Court stated:

If respondent's view is to prevail, a person arrested by law enforcement officers who announce that they believe such person to be responsible for a particular crime in order to calm the fears of an aroused populace, presumably obtains a claim against such officers under § 1983. And since it is surely far more clear from the language of the Fourteenth Amendment that "life" is protected against state deprivation than it is that reputation is protected against state injury, it would be difficult to see why the survivors of an innocent bystander mistakenly shot by a policeman or negligently killed by a sheriff driving a government vehicle, would not have claims equally cognizable under § 1983.

It is hard to perceive any logical stopping place to such a line of reasoning. Respondent's construction would seem almost necessarily to result in every legally cognizable injury which may have been inflicted by a state official acting under "color of law" establishing a violation of the Fourteenth Amendment. We think it would come as a great surprise to those who drafted and shepherded the adoption of that Amendment to learn that it worked such a result, and a study of our decisions convinces us they do not support the construction urged by respondent. *Paul v. Davis,* 424 U.S. at 698–99, 96 S.Ct. 1155.

of the "expectation of continued patronage" by those customers.

■ In sharp contrast, this case only involves allegedly defamatory remarks made to the county and the public generally that could affect Waste Management's business reputation. This is not sufficient to satisfy the requirement that a constitutionally protected property interest be at stake. As we have noted, damage to the reputation of a business, without more, does not rise to the level of a constitutionally protected property interest. *See Paul v. Davis*, 424 U.S. at 701, 96 S.Ct. 1155 (reputation alone is not property sufficient to invoke the procedural protection of the Due Process Clause). Allowing Waste Management to proceed under § 1983 on a claim of damage to its reputation would constitutionalize the state law tort of defamation and would have the anomalous effect of extending constitutional protection to the reputation of business concerns, while denying the same protection to the reputation of individuals.[4]

### 2. *Liberty Interest–Stigma Plus Property Right*

■ Waste Management's second claim for relief alleges that "the official stigmatization of the plaintiffs plus the alteration or extinguishment of their statutorily recognized property interest in their business goodwill deprived the plaintiffs of liberty" in violation of the Fourteenth Amendment. This claim relies on the "stigma-plus" test articulated in *Paul v. Davis*, which requires that the complaint allege that the state action not only caused the stigma of a damaged reputation, but

also that the state action deprived the plaintiff of a protected liberty or property interest or a status recognized by the state. *Paul v. Davis*, 424 U.S. at 712, 96 S.Ct. 1155. In this case, the "plus" alleged is the deprivation of a protected property interest. We held in the previous section that the alleged damage to the Waste Management's business reputation did not amount to the deprivation of a federally protected property interest. Thus, the second claim was properly dismissed.

### 3. *Liberty Interest–Stigma Plus Right to Petition*

■ Waste Management's fourth claim alleges that Miller injured Waste Management's reputation "in connection with" its exercise of its right to petition under the First Amendment. This claim again also relies on the "stigma-plus" test from *Paul v. Davis*. Our conclusion in section III A, that Waste Management's application for a major use permit does not invoke the protections of the Petition Clause, eliminates the "plus" and thus requires the dismissal of their fourth claim for relief.

### 4. *Liberty Interest–Alleged Adjudication of Criminal Conduct*

■ Waste Management's fifth claim for relief purports to state a cause of action under *Jenkins v. McKeithen*, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). The complaint alleges that Miller, in conducting the investigation requested by the Board and reporting his findings to the Board, "exercised a function closely akin to making an official and public adjudication of criminal culpability." The report alleg-

---

4. We recognize that our resolution of this issue differs from that of the Fifth Circuit in *Marrero v. City of Hialeah*, 625 F.2d 499, 514 (1980). There the court stated "[a]lthough Florida law may not recognize personal reputation as a liberty or property interest, it does recognize business reputation, *at least to the extent it approximates goodwill*, as a property interest." *Id.* at 514 (emphasis added; footnote omitted). The court then held that the plaintiffs' allegation that the defendant's defamatory statements injured their business goodwill stated a claim under § 1983. *Id.* at 515. The key phrase is "at least to the extent it approximates goodwill." As we have discussed, reputation is not the equivalent of goodwill, although it is one of many things that can affect goodwill. The analysis in *Marrero* has been criticized by other courts. *See Cooper v. Dupnik*, 924 F.2d 1520, 1534 (9th Cir.1991); *Green v. DeCamp*, 612 F.2d 368, 370–71 (8th Cir.1980); *Sullivan v. State of New Jersey*, 602 F.Supp. 1216, 1222 (D.N.J. 1985) *aff'd* 853 F.2d 921 (3d Cir.1988).

edly publicly "branded and continues to brand the plaintiffs as connected to organized crime." Waste Management argues that due process entitled them to notice and an opportunity to be heard prior to public dissemination of Miller's Final Report.

*Jenkins* involved a challenge to the constitutionality of a Louisiana statute that created a commission of inquiry to investigate possible violations of criminal laws arising out of labor management relations. *Id.* at 413–14, 89 S.Ct. 1843. The plaintiff brought suit under § 1983, alleging that the commission was an "executive trial agency 'aimed at conducting public trials concerning criminal law violations' and that its function was publicly to condemn." *Id.* at 419, 89 S.Ct. 1843. The Supreme Court agreed and held that the commission clearly exercised an accusatory function, rather than a purely investigatory function, in that it was meant to "supplement and assist the efforts and activities of the several district attorneys, grand juries and other law enforcement officials and agencies...." *Id.* at 414–15, 89 S.Ct. 1843. As such, the commission's procedures had to satisfy the minimum requirements of the Fourteenth Amendment. *Id.* at 428, 89 S.Ct. 1843.

A similar argument was made in *Paul v. Davis,* which the Court rejected holding that *Jenkins* was inapplicable. The Court stated:

Indeed, the actions taken by [the defendants] in this case fall far short of the more formalized proceedings of the Commission on Civil Rights established by Congress in 1957, the procedures of which were upheld against constitutional challenge by this Court in *Hannah v. Larche,* 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960). There the Court described the functions of the Commission in this language:

"It does not adjudicate. It does not hold trials or determine anyone's civil or criminal liability. It does not issue orders. Nor does it indict, punish, or impose any *legal sanctions.* It does not make determinations depriving anyone of his life, liberty, or property. In short, the Commission does not and cannot take any affirmative action which will affect an individual's *legal rights.* The only purpose of its existence is to find facts which may subsequently be used as the basis for legislative or executive action." *Id.,* 395 U.S. at 441, 89 S.Ct. 1843 (emphasis supplied).

Addressing itself to the question of whether the Commission's "proceedings might irreparably harm those being investigated by subjecting them to public opprobrium and scorn, the distinct likelihood of losing their jobs, and the possibility of criminal prosecutions," the Court said that "even if such collateral consequences were to flow from the Commission's investigations, they would not be the result of any affirmative determinations made by the Commission, and they would not affect the legitimacy of the Commission's investigative function." *Id.,* 395 U.S. at 443, 89 S.Ct. 1843.

*Paul v. Davis,* 424 U.S. at 706 n. 4, 96 S.Ct. 1155.

Like *Paul v. Davis,* the present case differs markedly from *Jenkins.* Miller exercised an investigative function, not an accusatory function, for the County of San Diego. Miller's investigatory role is a far cry from the accusatory commission of inquiry at issue in *Jenkins.* In this case, the Board requested Miller's investigation to further its legislative determination regarding Waste Management's then-pending application for a major use permit. In its memorandum to Miller, the Board requested that Waste Management's operating record be "closely examined, and impartially investigated to see how their record compares with other nationwide firms in the waste industry." Miller's investigation was for the purpose of assisting the Board so that further legislative action could be taken and the Board could approve or deny Waste Management,

Inc.'s application. The purpose, like that in *Hannah v. Larche*, was "to find facts which may subsequently be used as a basis for legislative or executive action." *See Hannah v. Larche*, 363 U.S. at 441, 80 S.Ct. 1502. The fifth claim for relief was properly dismissed.

## IV.

### *CONCLUSION*

With respect to each of Waste Management's five claims for relief, the complaint fails to state a claim upon which relief can be granted. Accordingly, the district court's dismissal of the action is affirmed.

**AFFIRMED.**