**HAMPTON BAYS CONNECTIONS, INC., and Phoenix Group of Hampton Bays, Inc., Plaintiffs,**

**v.**

**Robert DUFFY, individually, Nancy Graboski, individually, John Blaney, individually, Peg Caraher, individually, Vincent Martorello, individually, Paul J. Houlihan, individually, "John Doe" and "Jane Doe", #'s 1–5, 6–10, and 11–15, individually and personally, representing the fictitious names of individuals, whose full names are unknown to Plaintiff, were at all relevant times herein employees of the Town of Southampton Department of Land Management Planning Division, The Town of Southampton Department of Land Management and Zoning Division, and the Town Board Members of the Town of Southampton, and the Town of Southampton, Defendants.**

No. CV 99–7029(ADS).

United States District Court, E.D. New York.

Jan. 18, 2002.

Perry, Kearon & Campanelli, LLP by Andrew J. Campanelli, Westbury, NY, for Plaintiffs.

The Law Offices of Frederick Eisenbud by Frederick Eisenbud, Alicia Menechino, Melville, NY, for Defendants.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This lawsuit arises from the allegations by the plaintiffs, Hampton Bays Connections, Inc. ("HBC") and the Phoenix Group of Hampton Bays, Inc. ("Phoenix," collectively the "plaintiffs") that the defendants, consisting of the Town of Southampton

and various of its agencies, employees, and officials, violated the plaintiffs' constitutional rights to petition the government for the redress of grievances, equal protection, and substantive and procedural due process under 42 U.S.C. § 1983. In a decision and order dated January 26, 2001, the Court granted in part and denied in part a motion by the defendants to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."). In particular, the Court dismissed: (1) the Equal Protection claim; (2) the substantive due process claim with respect to the plaintiffs' petition to rezone their property and the plaintiffs' application for site plan approval; (3) the procedural due process claims; (4) the prima facie tort claim; and (5) the claim for tortious interference with a contract. *See Hampton Bays Connections, Inc. v. Duffy,* 127 F.Supp.2d 364, 384 (E.D.N.Y.2001). Thus, the two remaining claims are: (1) First Amendment retaliation claim; and (2) the substantive due process claim with respect to the plaintiffs' application for a construction permit. *Id.*

Presently before the Court is a motion by the defendants for the following relief: (1) pursuant to Local Rule 6.3, an order granting reargument of the motion to dismiss the substantive due process claim in regard to the plaintiffs' application for a construction permit; (2) pursuant to 28 U.S.C. § 1292(b) an order modifying the Court's January 26, 2001 order to add the language of the statute necessary for the defendants to seek an immediate appeal to the Second Circuit from this Court's determination that "the plaintiffs' conduct in applying for approvals and permits regarding the McDonald's construction is protected by the First Amendment right to petition the government for the redress of grievances," *id.* at 373; and (3) to stay the time within which the defendants must answer the amended complaint until either

the Court determines the present motions or the Court of Appeals hears the defendants' appeal, whichever date is later.

## I. *BACKGROUND*

The complete factual background of this dispute is set forth in the Court's January 26, 2001 decision and order, *Hampton Bays Connections, Inc.,* 127 F.Supp.2d at 368–71, and is deemed incorporated in this decision. Although familiarity with the Court's prior decision is presumed, the factual allegations pertinent to the present motions are briefly repeated here. They are derived from the plaintiffs' amended complaint.

### A. The HBC Property

In the early fall of 1997, HBC, a real estate developer, leased the front portion of a parcel of land to McDonald's for the construction of a 3000 foot McDonald's restaurant. HBC intended to build an ambulatory surgery center, which would be used by Stony Brook Hospital ("Stony Brook"), on the rear portion of its property, which was zoned for residential use.

On March 23, 1998, McDonald's applied to the Southampton Planning Board (the "Planning Board") for a special exception use permit and site plan approval to build the restaurant on the front portion of the HBC property.

On April 24, 1998, the New York State Department of Health ("DOH") issued a Certificate of Need to Stony Brook authorizing the construction of the ambulatory surgery center. The Certificate of Need was conditioned on construction commencing on or before December 31, 1998, and if construction did not begin by that date, the approval would be deemed cancelled.

On August 13, 1998, the Planning Board held a public hearing on McDonald's application for a special exception use permit

and site plan approval. Defendants Nancy Graboski ("Graboski"), John Blaney ("Blaney"), and Peg Caraher ("Caraher"), all members of the Planning Board, continued the hearing to September 10, 1998. It appears from the amended complaint, that the Planning Board held the hearing on that date, but reserved decision.

Meanwhile, on August 27, 1998, HBC filed an application to change the zoning designation of the rear portion of its property from residential use to Planned Development District ("PDD") so that construction could begin on the ambulatory surgery center. On September 14, 1998, the Planning Board returned the application to HBC, because it was incomplete.

On September 28, 1998, before HBC could resubmit its application for a change of zone, and before the Planning Board decided McDonald's application for its site plan approval and special exception use permit, the Southampton Town Board imposed a six-month moratorium on the issuance of any zoning approvals in the Hampton Bays. The moratorium made it impossible for HBC to begin construction on the ambulatory surgery center by December 31, 1998. Therefore, pursuant to the conditions set forth in the Certificate of Need, the DOH cancelled the Certificate of Need, Stony Brook looked at other property to build its ambulatory surgery center, and HBC lost a 25–year, $17,000,000 lease with the hospital.

On June 10, 1999, the Planning Board granted McDonald's special exception use permit and site plan approval. On June 17, 1999, McDonald's applied for a building permit from the Town of Southampton Department of Land Management and Zoning ("Building Department"). The Building Department returned the application on the ground that it was not submitted with a wastewater management approval.

On July 13, 1999, the Town Board adopted an amended local zoning law. On the same date, McDonald's resubmitted its application for a building permit, and on August 17, 1999, the Building Department denied McDonald's application based on the newly enacted zoning law.

### B. The Phoenix Property

The president of HBC, as well as most of the company's officers and board members, are also officers and board members of Phoenix. In 1995, Phoenix owned a parcel of property in the Hampton Bays on which it intended to construct two medical arts buildings: 223 West Montauk Highway, and 225 West Montauk Highway. On October 24, 1996, the Planning Board approved Phoenix's site plan application for construction of a medical office building at 223 West Montauk Highway and granted Phoenix a special exception permit for renovation of the building located at 225 West Montauk Highway.

Phoenix did not build the structure at 223 West Montauk Highway within the two years allotted by the Board's site plan approval. Thus, on October 24, 1998, Phoenix re-applied for approval of its site plan at 223 West Montauk Highway. This application was submitted after McDonald's had applied for a special exception use permit and for site approval to build the restaurant on HBC's property. The Planning Board returned Phoenix's reapplication, stating that it was incomplete.

### C. The Causes of Action Remaining After the Court's January 26, 2001 Order

In its Section 1983 First Amendment retaliation claim, HBC argues that the defendants retaliated against it for exercising its First Amendment right to apply for various approvals and permits in regard to

the construction of a McDonald's by defeating HBC's attempts to construct the ambulatory surgery center. Phoenix raises a similar claim, asserting that Graboski and members of the Planning Board retaliated against Phoenix for HBC's exercise of its First Amendment right to apply for approvals and permits in regard to the construction of a McDonald's by refusing to accept Phoenix's applications to build a medical office building.

In support of its substantive due process claim, HBC alleges that it has a property interest in the use and development of its property, and the defendants deprived them of that interest by arbitrarily denying certain land use permits. HBC contends that the defendants' conduct violated the plaintiff's substantive due process rights.

## II. *DISCUSSION*

### A. The Motion for Reconsideration or Reargument

This Court's January 26, 2001 decision held that HBC's substantive due process claim in regard to the application for a construction permit was sufficient to withstand the defendants' challenge pursuant to Rule 12(b)(6). *Hampton Bays Connections, Inc.*, 127 F.Supp.2d at 379. The Court found that HBC had alleged a property interest in the construction permit application, because the Building Inspector lacked discretion when deciding whether a permit should be issued. *Id.* The Court further found that HBC had alleged an arbitrary denial of the construction permit, because the amended complaint states that the denial was based on the fact that the defendants did not want a fast food restaurant, such as McDonald's, constructed in the Hampton Bays. *Id.*

In particular, the Court noted that although the amended complaint stated that the Building Inspector denied the application because it did not comply with the newly enacted zoning regulation, the amended complaint also alleged that "the Building Department intentionally delayed reviewing their application for a construction permit so that the Town Board could pass a new local law, amending the zoning regulations so that the erection of fast food restaurants in the area of the plaintiffs' property was no longer permitted." *Id.* Viewing the allegations in the amended complaint in the light most favorable to the plaintiff, the Court found that the plaintiffs had alleged an arbitrary denial of the construction application. *Id.*

The defendants now argue that the Court's decision overlooked language in the Building Inspector's August 17, 1999 written denial of the building permit, which the defendants claim would have altered the outcome of the decision. The defendants point to the second sentence of the letter which states that McDonald's application for a building permit did not address three conditions set forth in the June 10, 1999 site plan approval by the Planning Board's approval and, the application could be denied on that basis alone. Based on this sentence, the defendants argue that the McDonald's application would have been denied even if the new zoning regulations had not been amended, because the application failed to satisfy other, unrelated conditions. Therefore, argue the defendants, had this Court considered the second reason for the denial of the permit, the Court would have concluded that the Building Inspector's action does not constitute a substantive due process violation.

■ Motions for reargument are governed by Rule 6.3 of the Local Rules of the United States Courts for the Southern and Eastern Districts of New York. Local Rule 6.3 provides as follows:

A notice of motion for reargument shall be served within ten (10) days after the docketing of the court's determination of the original motion. There shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked. No oral argument shall be heard unless the court grants the motion and specifically directs that the matter shall be reargued orally. No affidavits shall be filed by any party unless directed by the court.

The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked— matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transportation, Inc.*, 70 F.3d 255, 256–57 (2d Cir.1995) (citations omitted). The difficult burden imposed on the moving party has been established "in order to dissuade repetitive arguments on issues that have already been considered fully by the Court." *Ruiz v. Commissioner of D.O.T. of City of New York*, 687 F.Supp. 888, 890 (S.D.N.Y.1988), *modified on other grounds*, 934 F.2d 450 (2d Cir.1991). To grant such a motion means that a Court must find that it overlooked "matters or controlling decisions" which, if it had considered such issues, "would have mandated a different result." *Durant v. Traditional Investments, Ltd.*, 88 CV 9048, 1990 WL 269854 (S.D.N.Y. April 25, 1990).

■ At the outset, the Court finds that it may consider the contents of the August 17, 1999 denial letter in reconsidering whether the plaintiffs' substantive due process claim survives the Rule 12(b)(6) motion. It is well settled that a Court deciding a motion to dismiss the complaint may consider the "facts stated on the face of the complaint, ... documents appended to the complaint or incorporated in the complaint by reference, and ... matters of which judicial notice may be taken." *Leonard F. v. Israel Discount Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir.1999); *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir.1999). A court may also consider "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 149 (2d Cir.1993); *see Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47–48 (2d Cir.1991).

Here, the plaintiffs refer to the August 17, 1999 denial of the building permit in paragraph 141 of the amended complaint. Accordingly, the Court finds that the letter is incorporated in the amended complaint by reference. *See Leonard F.*, 199 F.3d at 107; *Hayden*, 180 F.3d at 54. Furthermore, given that the substantive due process cause of action is based in part on the August 17, 1999 letter, it is clear that the plaintiffs were in possession of the document, had knowledge of it, and relied on it in bringing this lawsuit. *See Brass*, 987 F.2d at 149; *Cortec Indus.*, 949 F.2d at 47–48. For these reasons, the Court finds that it can consider the contents of the letter in determining the defendants' motion to reargue the motion to dismiss the complaint pursuant to Rule 12(b)(6).

■ To state a substantive due process claim for wrongful denial of a permit, the plaintiffs must satisfy a two-pronged test. First, they must show "that [they] had a valid 'property interest' in a benefit that was entitled to constitutional protection at the time [they were] deprived of that benefit." *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 17 (2d Cir.1999). Here, the defendants are not requesting that the Court reconsider whether the

plaintiffs had a property interest in the building permit. Accordingly, the Court's decision will address only whether the plaintiff's have satisfied the second prong by alleging that the defendants' action in depriving them of the valid property interest was "so outrageously arbitrary as to be a gross abuse of governmental authority." *Lisa's Party City*, 185 F.3d at 17.

 A claim for a substantive due process violation must describe state action taken "under circumstances warranting the labels 'arbitrary' and 'outrageous.'" *Natale v. Town of Ridgefield*, 170 F.3d 258, 262 (2d Cir.1999). Substantive due process does not forbid arbitrary or capricious governmental actions that can be corrected in a state court's review of an administrative proceeding. *See id.* "Substantive due process is an outer limit on the legitimacy of governmental action, ... [and its] standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." *Id.* at 262–63.

 The Building Inspector's August 17, 1999 denial of HBC's McDonald's application states, in relevant part:

I will note from the onset [sic] that Conditions No. 2, 9 and 24 of the June 30, 1999 Planning Board approval have not been addressed and by themselves would prohibit the issuance of a building permit at this time. Notwithstanding the aforementioned deficiencies, your application has been denied for the following reasons ...

The letter then lists ten subsections of the newly enacted zoning amendments with which the McDonald's application failed to comply.

The Court now finds that it overlooked the sentence informing the defendants that their failure to satisfy conditions two, nine, and twenty-four "would prohibit the issu-

ance of a building permit at this time" when it rendered the January 26, 2001 decision. Further, had the Court considered this language, it would have reached a different conclusion regarding the arbitrariness of the government's conduct. *Shrader v. CSX Transportation, Inc.*, 70 F.3d 255, 256–57 (2d Cir.1995).

After re-examining the August 17, 1999 letter, the Court finds that the denial was based on two factors: (1) the plaintiffs' failure to satisfy three requirements upon which the issuance of a building permit was premised; and (2) the plaintiffs' failure to comply with the new zoning amendments. Therefore, even if the zoning regulations had not been amended in a manner that prohibited the McDonald's construction, the Building Inspector would have denied the building permit application in any event, because the plaintiffs did not satisfy three conditions precedent to the receipt of the permit.

Moreover, the Court finds that to deny a building permit because the application fails to meet the requirements of the Planning Board is not an arbitrary governmental action. Conditions two, nine, and twenty-four are three of twenty-eight requirements outlined in the Planning Board's site approval, which is attached to the complaint and was actually granted on June 10, 1999, not June 30, 1999, as indicated in the denial letter. The site plan approval states that "the McDonald's Corporation site plan application ... be and hereby is APPROVED, with the Following Conditions and Modifications:"

"2. Prior to the issuance of a building permit, a covenant and/or easement shall be submitted in a form acceptable to the Town Attorney's office that provides for common access between the subject parcel and adjoining westerly parcel. . . .

"9. Prior to the issuance of a building permit, the applicant shall provide prior notification, at least two weeks, when the subject site is scheduled for clearing to the Town of Southampton, Department of Land Management Planning Division and a construction fence shall be installed around the drip line of the natural vegetation that is to remain on site. . . .

"24. Prior to the issuance of a building permit, the applicant shall obtain Suffolk County Department of Health Services approval. . . ."

The three conditions are straightforward Planning Board requirements that will prevent an applicant from receiving a building permit if they remain unfulfilled. The amended complaint and the documents attached thereto indicate that the conditions of the site plan approval were not in any way connected to the zoning amendments. The Planning Board set forth all twenty-eight conditions more than one-month prior to the passage of the amendments, and the conditions do not refer to or require compliance with zoning regulations. Accordingly, the Building Inspector's decision to deny the building permit because the plaintiffs failed to satisfy three conditions precedent to the issuance of a permit was a legitimate government action taken in apparent good faith.

That the denial was also based on zoning amendments allegedly passed in order to prevent the McDonald's application does not alter the Court's conclusion. First, even if the zoning amendments had neither been passed nor relied upon, the letter states that the permit application would have been denied anyway, for failing to comply with the Planning Board's conditions. In addition, where as here, there are two reasons to deny a permit application, and one of those reasons is clearly legitimate, the amended complaint "is not

sufficient to demonstrate conduct so outrageously arbitrary as to constitute a gross abuse of governmental authority that will offend the substantive component of the Due Process Clause." *Natale,* 170 F.3d at 262.

The plaintiffs' argue that the language of the August 17, 1999 letter demonstrates that the permit denial was based solely on the zoning amendments and not on the Planning Board's conditions. The plaintiffs rely on the fact that the Building Inspector wrote, "[Y]our application has been denied for the following reasons," and lists the various zoning regulations the application violated. The plaintiffs' improperly read this sentence in a vacuum. When the letter is read as a whole, it is clear that the Building Inspector's decision is based on the plaintiffs' failure to comply with both the zoning amendments and the Planning Board's conditions. Indeed, the statement, "Conditions No. 2, 9, and 24 of the June [10], 1999 Planning Board approval have not been addressed and by themselves would prohibit the issuance of the building permit at this time," indicates that the plaintiffs' failure to comply with the Planning Board conditions was a second reason supporting the denial of the permit.

Accordingly, the Court finds that it overlooked language in the August 17, 1999 denial letter when it decided the defendants' original motion to dismiss the complaint. Had the Court considered this language, it would have granted the plaintiffs' motion to dismiss the substantive due process claim that is based on the denial of the construction permit. Accordingly, the Court grants the defendants' motion to reargue that portion of its prior decision, and dismisses the substantive due process claim in its entirety.

**B. The Motion to Amend the January 26, 2001 Order**

The defendants also seek an order from this Court certifying this case for an interlocutory appeal. In particular, the defendants wish to take an immediate appeal from the Court's ruling that the "plaintiffs conduct in applying for approvals and permits regarding the McDonald's construction is protected by the First Amendment right to petition government for the redress of grievances." *Hampton Bays Connections*, 127 F.Supp.2d at 373. In support of their application, the plaintiffs argue that this Court's interpretation of the First Amendment will have enormous implications for municipalities and courts, because "routine applications for land use permits will be subject to constitutional scrutiny whenever an applicant can assert that someone associated with the review has personal animus to the application." The defendants assert that "[a] pure issue of law will be presented to the Court of Appeals," and if that Court reverses, the case will be entirely resolved.

A district court may certify an order for an interlocutory appeal if it is of the opinion that the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and an immediate appeal may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Certification, is warranted "only in exceptional cases where an intermediate appeal may avoid protracted and expensive litigation." *Telectronics Proprietary, Ltd. v. Medtronic, Inc.* 690 F.Supp. 170, 172 (S.D.N.Y. 1987); *see also Pereira v. Cogan*, 265 B.R. 32, 34 (S.D.N.Y.2001). "[O]nly exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment," *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir.1990), and a district court is to "exercise great care in making § 1292(b) certification," *Westwood Pharmaceuticals, Inc. v. National Fuel Gas Distribution Corp.*, 964 F.2d 85, 89 (2d Cir.1992). Indeed, § 1292(b) was not intended to be a "vehicle to provide early review of difficult rulings in hard cases." *German v. Federal Home Loan Mortgage Corp.*, 896 F.Supp. 1385, 1398 (S.D.N.Y. 1995).

The defendants contend that the Court's ruling involves a substantial ground for difference of opinion, because it is a matter of first impression and the Court referred to a Ninth Circuit case that may not support the Court's conclusion. In the January 26, 2001 decision, this Court stated that "the parties have not provided and the Court has not found, a case which holds that applying to a town planning board or similar entity for special use exception permits, site approval plans, or building permits is conduct protected by the First Amendment right to petition government for the redress of grievances." *Hampton Bays Connections*, 127 F.Supp.2d at 373. The Court then described cases in which courts have determined that analogous conduct is constitutionally protected. *Id.* (citations omitted). The Court also referred to a Ninth Circuit decision in which the Court of Appeals held that an application by Waste Management of California, Inc. for a major use permit is not equivalent to petitioning the Government for the redress of grievances under the First Amendment on the ground that it implicates neither the applicant's associational or speech interests. *See Hampton Bays Connections*, 127 F.Supp.2d at 373 (citing *WMX Technologies, Inc. v. Miller*, 197 F.3d 367, 372 (9th Cir.1999)).

However, "the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground

for difference of opinion." *In re Flor v. BOT Financial Corp.*, 79 F.3d 281, 284 (2d Cir.1996). To determine whether a substantial ground for difference of opinion truly exists, a district court must analyze the strength of the arguments in opposition to the challenged ruling. *Id.*

■■■ The defendants' argument that the "Court's ruling will encourage countless other civil rights lawsuits," is an insufficient reason to certify this question for appeal. Though the defendants' reminder that district courts should not sit as zoning boards of appeal is a stronger argument, the Court does not believe that its January 26, 2001 order places district courts in that position. Indeed, the Court did not rule on the propriety of the Planning Board's decisions, nor does the Court's decision encourage such rulings. Rather, courts presented with the question of whether a plaintiff has established a First Amendment retaliation claim under Section 1983 must determine, among other things, whether the defendant's conduct was motivated by or substantially caused by the plaintiff's exercise of free speech. *See Board of County Commissioners v. Umbehr*, 518 U.S. 668, 676, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996); *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir.2000). As such, the Court finds the defendants' arguments in opposition to its ruling unpersuasive. Accordingly, the Court concludes that substantial grounds for disagreement with its decision do not exist. *In re Flor*, 79 F.3d at 284.

In addition, the plaintiffs do not indicate that certification would materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b). A reversal by the Second Circuit would certainly terminate the litigation; however, should the Second Circuit affirm this Court's decision, the interlocutory appeal would only prolong the litigation. There is only one cause of action remaining in the case, and discovery will be complete on January 31, 2002. Accordingly, the Court finds that certification would not materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b).

In sum, the Court finds that this case does not present the exceptional circumstances that would "justify a departure from the policy of postponing appellate review until after the entry of a final judgment," *Klinghoffer*, 921 F.2d at 25, and declines to use § 1292(b) as a "vehicle to provide early review of difficult rulings in hard cases," *German*, 896 F.Supp. at 1398. Accordingly, the defendants' motion for an order amending the January 26, 2001 decision to include language certifying the case for an interlocutory appeal is denied.

## C. The Motion to Stay Discovery

The defendants have also moved to stay the time within which they must answer the amended complaint until either the Court determines the present motions or the Court of Appeals hears the defendants' appeal, whichever date is later. In light of the above rulings, the Court finds that the motion to stay discovery is moot. Accordingly, the motion is denied.

## III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that the defendants' motion for reconsideration of the ruling that denied the defendants' motion to dismiss the substantive due process claim in regard to the building permit is **GRANTED**; and it is further

**ORDERED**, that the substantive due process claim in regard to the building permit is **DISMISSED**; and it is further

**ORDERED**, that the defendants' motion to certify the Court's First Amend-

ment ruling for an interlocutory appeal is **DENIED**; and it is further

**ORDERED**, that the defendants' motion to stay discovery is **DENIED**.