HAMPTON BAYS CONNECTIONS, INC., and Phoenix Group Of Hampton Bays, Inc., Plaintiffs,

v.

Robert DUFFY, individually, Nancy Graboski,, individually, John Blaney, individually, Peg Caraher, individually, Vincent Martorello, individually, Paul J. Houlihan, individually, "John Doe" and "Jane Doe", #'s 1–5, 6–10, and 11–15, individually and personally, representing the fictitious names of individuals, whose full names are unknown to Plaintiff, were at all relevant times herein employees of the Town of Southampton Department of Land Management Planning Division, the Town of Southampton Department of Land Management and Zoning Division, and the Town Board Members of the Town of Southampton, and the Town of Southampton, Defendants.

No. CV 99–7029(ADS).

United States District Court, E.D. New York.

Jan. 26, 2001.

Perry, Kearon & Campanelli, LLP by Andrew J. Campanelli, Westbury, NY, for Plaintiffs.

The Law Offices of Frederick Eisenbud by Frederick Eisenbud, Alicia Menechino, Melville, NY, for Defendants.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This lawsuit arises from the allegations by the plaintiffs, Hampton Bays Connections, Inc. ("HBC") and the Phoenix Group of Hampton Bays, Inc. ("Phoenix," collectively the "plaintiffs") that the defendants, consisting of the Town of Southampton and various of its agencies, employees, and officials, violated the plaintiffs' constitutional rights to free speech, equal protection, and substantive and procedural due process under 42 U.S.C. § 1983. Presently before the Court are (1) the defendants' motion to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."); (2) the defendants' motion for sanctions pursuant to Fed.R.Civ.P. 11 and 28 U.S.C. § 1927; and (3) the plaintiffs' motion for sanctions pursuant to 28 U.S.C. § 1927.

## I. BACKGROUND

### A. The HBC Property

The following facts are derived from the plaintiffs' amended complaint. In April 1995, HBC purchased a 9.77 acre parcel of real property located at 240 West Montauk Highway, in Hampton Bays. In early fall 1997, HBC leased the front 1.5 acres of its property, which was zoned for "Highway Business," to McDonald's Corporation for the construction of a 3,000 square-foot McDonald's restaurant. At the time of the lease, HBC intended to construct an ambulatory surgery center, which would be used by Stony Brook Hospital ("Stony Brook"), on the rear portion of its property, which was zoned for residential use.

On October 23, 1997, the Southampton Planning Board ("Planning Board") issued a pre-application report regarding the McDonald's proposal. The Planning Board set forth several recommendations but was otherwise favorable to the construction of the restaurant. At about the same time the pre-application report was issued, a member of the Planning Board informed HBC that in order to build the restaurant, HBC would have to purchase four Pine Barrens Credits, which are transferrable development rights that permit increased development in certain portions of Long Island. HBC bought four Pine Barrens Credits for the sum of $50,000.

On March 23, 1998, McDonald's submitted a formal application to the Planning Board for a special exception use permit and for site approval to build a McDonald's Restaurant on HBC's property. According to the plaintiffs, the Planning Board is required, by law, to issue a "determination of significance" within 20 days of receipt of an application. The Planning Board failed to take any action on the McDonald's application for three months.

Meanwhile, HBC and Stony Brook were pursuing the necessary permits for the construction of the ambulatory surgery center. On April 24, 1998, the New York State Department of Health ("DOH") issued a Certificate of Need to Stony Brook authorizing the construction of the center. The Certificate of Need was conditioned on construction commencing on or before December 31, 1998, and if construction did not begin by that date, the approval would be deemed cancelled.

Between March and July 1998, Edmund Bodkin ("Bodkin"), an officer and a member of the Board of Directors of HBC as well as the President and member of the Board of Directors of Phoenix, met with defendant Robert Duffy ("Duffy"), who was Planning and Development Administrator for the Town of Southampton, to discuss the possibility of constructing an ambulatory surgery hospital on the rear portion of HBC's property. The plaintiffs allege that Duffy told HBC representatives that he would defeat the application for the ambulatory surgery center in retaliation for HBC's pursuit of the McDonald's application. The plaintiffs claim that Duffy said, "The McDonald's application will hurt the surgical center's application. If this application was not here, you would have no problem getting the surgical center. I do not want a McDonald's in Hampton Bays." When the HBC representatives told Duffy that approval for the ambulatory surgery center was not a decision for him alone to make, he responded, "If McDonald's does get approval, I'll make sure that [the] trees remain in front of McDonald's blocking the view from Montauk Highway." According to the plaintiffs, Duffy continued by stating, "If you attempt to cut the trees down, I'll have you arrested."

On August 13, 1998, the Planning Board held a public hearing on McDonald's application for a special exception use permit and the site plan approval. Defendants Nancy Graboski ("Graboski"), John Blaney ("Blaney"), and Peg Caraher ("Caraher"), all members of the Planning Board, continued the hearing to September 10, 1998, a move that the plaintiffs claim was a violation of the local ordinance. The amended complaint alleges that a local ordinance

required the Planning Board to render a decision on the McDonald's application within 62 days of the hearing, but the Planning Board failed to do so.

In August 1998, HBC continued to pursue construction of the ambulatory surgery center. As noted above, the rear portion of HBC's property was zoned for residential use. Thus, in order to erect the center, HBC had to petition the Planning Board to change the zoning designation to Planned Development District ("PDD"), which it did by filing an application to that effect on August 27, 1998. The Town returned the application to HBC on September 14, 1998, because it was incomplete. The amended complaint alleges that defendant Duffy issued a memo on August 31, 1998, in which he set forth additional requirements that must be met before HBC's application would be accepted.

On September 28, 1998, before HBC could resubmit its application for a change of zone, and before the Planning Board decided McDonald's application for its site plan approval and special exception use permit, the Southampton Town Board imposed a six-month moratorium on the issuance of any zoning approvals in the Hampton Bays. In a press release, issued on September 8, 1998, the Town Board stated that the main purpose for the moratorium was to stop the McDonald's construction.

In December 1998, HBC applied for an exemption from the moratorium so that the Planning Board could consider its application for a change of zone. At roughly the same time, Cat Cove, a real estate developer who is not a party to this action, also submitted an application for an exemption from the moratorium so that it could obtain approval for construction of a 90,000-foot shopping center approximately one and one-half miles from the HBC property. On or about December 15, 1998, the Town Board granted Cat Cove's application for an exemption. On December 22, 1998, the Town Board held a hearing regarding HBC's application for an exemption to the moratorium, and in January

1999, it denied that application. The plaintiffs contend that as a result of the Town Board's denial of HBC's application, the DOH's Certificate of Necessity expired, Stony Brook looked at other property for construction of its ambulatory surgery center, and HBC lost a 25-year, $17,000,000 lease with the hospital.

On June 10, 1999, the Planning Board granted McDonald's special exception use permit and site plan approval. On June 17, 1999, McDonald's applied for a building permit from the Town of Southampton Department of Land Management and Zoning ("Building Department"). The Building Department returned the application on the ground that it was not submitted with a wastewater management approval. The plaintiffs contend that McDonald's decision to submit its application without a wastewater management approval was based on the Planning Board's advice that McDonald's was not required to obtain the approval prior to submitting its application for the permit. The plaintiffs allege that the Planning Board intentionally misrepresented the requirements for a building permit in an attempt to delay construction of the McDonald's.

On June 22, 1999, the Town Board Members held a hearing in regard to the enactment of a Zoning Ordinance. The plaintiffs contend that the hearing was improperly held, because the Planning Board, which is required to provide the Town Board with a written report prior to the hearing, did not submit that report until after the hearing had opened. On July 13, 1999, the Town Board adopted an amended local zoning law, and the plaintiffs allege that the amended law was significantly different from the one discussed at the public hearing. On the same date, McDonald's resubmitted its application for a building permit, and on August 17, 1999, the Building Department denied McDonald's application based on the newly enacted amended zoning law.

The Court takes judicial notice of a decision of the Supreme Court of the State of New York, Suffolk County (Cohalan, J.), dated August 3, 2000, reversing the Building Department's denial of McDonald's application for a building permit. The Suffolk County Supreme Court found that held that the Town of Southampton had violated the dictates of its own Town Code and the Municipal Home Rule law "in its haste to adopt the zoning regulations." The court further held that because the new zoning law had been adopted improperly, it was invalid. Finally, the Suffolk County Court concluded that "the building permit application must proceed to immediate review, unencumbered by the voided legislation." At oral argument, both parties informed this Court there has been activity regarding both the zoning amendment and the building permit application. However, because those factual allegations are not contained in the amended complaint, the Court cannot consider them in deciding the motion to dismiss. Accordingly, they are not mentioned here.

## B. The Phoenix Property

In regard to the relationship between the plaintiffs, the amended complaint alleges that Edmund Bodkin is the President and member of the Board of Directors of Phoenix as well as a member of HBC's Board of Directors. The amended complaint also states, "most of the officers and board members that comprise HBC also comprise [Phoenix]" (Amended Complaint ¶ 318).

In 1993, Phoenix purchased a 3.2 acre parcel of real property in the Hampton Bays. The property was zoned as permitted use, and Phoenix bought it with the intent to construct two medical arts buildings: 223 West Montauk Highway, and 225 West Montauk Highway.

On May 5, 1995, the Town Planning Board approved Phoenix's site plan application for construction of a medical office building located at 225 West Montauk Highway. On October 24, 1996, the Board approved Phoenix's site plan application for construction of a medical office building at 223 West Montauk Highway. On the same date, the Board granted Phoenix a special permission exception for renovation of the building located at 225 West Montauk Highway.

Phoenix failed to build the structure at 223 West Montauk Highway within the two years allotted by the Board's site plan approval. Thus, when the approval expired on October 24, 1998, Phoenix was required to re-apply for approval of its site plan at 223 West Montauk Highway. Phoenix submitted its reapplication after McDonald's had formally applied for a special exception use permit and for site approval to build the restaurant on HBC's property. The plaintiffs allege that the Planning Board returned Phoenix's reapplication as incomplete in retaliation for HBC's McDonald's application.

## C. The Claims Raised in the Amended Complaint

The amended complaint asserts three sets of claims for relief. In their first umbrella claim for relief, which is brought pursuant to 42 U.S.C. § 1983, the plaintiffs allege that the defendants deprived them of their First Amendment right to freedom of speech and their Fourteenth Amendment Rights to equal protection, substantive due process, and procedural due process.

In particular, HBC claims that the defendants collectively deprived it of its free speech right to apply for various approvals and permits in regard to the construction of a McDonald's by defeating HBC's attempts to construct an ambulatory surgery center in retaliation for HBC's pursuit of the McDonald's project. Phoenix claims that defendant Graboski and the Planning Board Members deprived Phoenix of its right to freedom of speech by denying Phoenix's applications to build a medical office building in retaliation for HBC's lawful exercise of its free speech right to

apply for approvals and permits in regard to the construction of a McDonald's.

HBC also contends that the defendants deprived it of its right to equal protection of the laws when the Town Planning Board granted Cat Cove's application for an exemption from the six-month moratorium on zoning approvals but denied HBC's application for an exemption from the same moratorium. The amended complaint alleges that the Planning Board granted Cat Cove's application but denied HBC's in retaliation for HBC's lawful applications to develop a McDonald's restaurant on its land. HBC further asserts that Cat Cove and HBC are similarly situated because Cat Cove was seeking to build a 90,000 square foot shopping center one and one-half miles away from the site HBC intended to use for the construction of an 18,000 square foot ambulatory surgery center. Phoenix does not raise an equal protection claim in the amended complaint.

HBC alleges that it had substantive due process rights to own and develop its property; to enter into contracts with third parties concerning the use of their property; and to lawfully acquired pine barren credits. HBC contends that the defendants deprived it of its substantive due process rights by arbitrarily denying land use permits in retaliation for HBC's lawful attempt to build a McDonald's. HBC further asserts that absent the defendants' due process violations, there is a substantial certainty that HBC's applications would have been granted.

Similarly, Phoenix claims that the defendants deprived its of its substantive due process rights to develop its property located at 223 West Montauk Highway and to enter into contracts with third parties regarding the development of that property when it denied Phoenix's application for the land use permits for 223 West Montauk Highway in retaliation for HBC's application for the construction of a McDonald's. Phoenix also asserts that absent the defendants' due process violations, there is a strong likelihood that its applica-

tion for the land use permits would have been granted.

Both HBC and Phoenix claim that they were denied their rights to procedural due process in that the defendants deprived the plaintiffs of their property rights without providing them with a reasonable opportunity to contest the government's actions. According to the amended complaint, the New York courts do not provide a judicial mechanism for challenging abuses of governmental power, such as the ones alleged by the plaintiffs.

In the second claim for relief, HBC alleges prima facie tort by defendants Duffy, Graboski, Blaney, Caraher, Martorello, Houlihan, Planning Staff Members, Building Staff Members, and Town Board Members, individually and in their official capacities. In particular, HBC claims that the defendants intentionally performed acts without justification and in furtherance of their self-interest and for the sole purpose of harming HBC. HBC further contends that the defendants' conduct caused it to suffer financial losses including but not limited to the $17,000,000 lease with Stony Brook and the deprivation of $50,000 worth of Pine Barrens Credits.

In the third claim for relief, HBC alleges that defendants Duffy, Graboski, Blaney, Caraher, Martorello, Houlihan, Planning Staff Members, Building Staff Members, and Town Board Members, individually and in their official capacities, tortiously interfered with the lease HBC was attempting to negotiate with Stony Brook. According to HBC, absent the defendants' intentional conduct, the lease agreement between Stony Brook and HBC would have been executed because it had already been drafted and was simply awaiting the parties' signatures.

As noted above, the Court must resolve three separately-filed motions: (1) the defendants' motion to dismiss the amended complaint; (2) the defendants' motion for sanctions; and (3) the plaintiffs' motion for sanctions.

## II. *DISCUSSION*

On a motion to dismiss for failure to state a claim, the Court should dismiss the complaint pursuant to Rule 12(b)(6) if it appears beyond doubt that the plaintiffs can prove no set of facts in support of their complaint which would entitle them to relief. *See King v. Simpson,* 189 F.3d 284, 286 (2d Cir.1999); *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). The Court must accept all factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Koppel v. 4987 Corp.,* 167 F.3d 125, 127 (2d Cir.1999); *Jaghory v. New York State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir. 1997). The issue to consider is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *See Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995). The Court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Discount Bank of N.Y.,* 199 F.3d 99, 107 (2d Cir.1999); *Hayden v. County of Nassau,* 180 F.3d 42, 54 (2d Cir.1999).

### A. The First Amendment Claims

■ To establish a First Amendment retaliation claim under section 1983, a plaintiff must show (1) conduct by the plaintiff that is protected by the First Amendment, and (2) that the defendant's conduct was motivated by or substantially caused by the plaintiff's exercise of free speech. *See Board of County Commissioners v. Umbehr,* 518 U.S. 668, 676, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996); *Friedl v. City of New York,* 210 F.3d 79, 85 (2d Cir.2000); *Greenwich Citizens Committee, Inc. v. Counties of Warren and Washington Indus. Development Agency,* 77 F.3d 26, 30 (2d Cir.1996); *Gagliardi v. Village of Pawling,* 18 F.3d 188, 194 (2d Cir.1994).

■ Thus, the first question this Court must address in regard to the First Amendment claim is whether the plaintiffs' conduct in regard to the McDonald's application is conduct protected by the First Amendment. The First Amendment provides, in relevant part, that "Congress shall make no law ... abridging ... the right of the people ... to petition the Government for a redress of grievances." U.S. Const. amend. I. "The Supreme Court has described the right to petition government for redress of grievances as 'among the most precious of the liberties safeguarded by the Bill of Rights.'" *Franco v. Kelly,* 854 F.2d 584, 589 (2d Cir.1988) (quoting *United Mine Workers v. Illinois State Bar Ass'n,* 389 U.S. 217, 222, 88 S.Ct. 353, 356, 19 L.Ed.2d 426 (1967)). The right "applies with equal force to a person's right to seek redress from all branches of government." *Id.* Indeed, the First Amendment protects not just the right of access to the courts but also "[t]he rights to complain to public officials and to seek administrative and judicial relief." *Gagliardi,* 18 F.3d at 194; *see Franco,* 854 F.2d at 589. Notably, the requirement that speech must be of public concern for it to be protected by the First Amendment was developed in the context of public employee speech and is inapplicable to cases in which the plaintiff alleges retaliation for protected speech in the form of a petition to the government. *See Friedl v. City of New York,* 210 F.3d 79, 87 (2d Cir.2000).

The conduct that the plaintiffs allege is protected by the First Amendment is: (1) the March 23, 1998, application to the Planning Board for a special exception use permit and for site approval to build a McDonald's restaurant on HBC's property; (2) the August 13, 1998, public hearing that was held by the Planning Board regarding the application for a special exception use permit and the site plan approval; (3) the June 17, 1999, application for a building permit from the Building Department of the Town of Southampton; and (4)

the July 13, 1999, resubmission of the application for a building permit.

The Court notes that the amended complaint is less than clear as to whether McDonald's or HBC and Phoenix actually filed the applications to construct the restaurant. However, viewing the facts in the amended complaint in the light most favorable to the plaintiffs, and given the procedural posture of the case, the Court assumes that the plaintiffs were in some way responsible for filing the applications for special exception use permits, site plan approvals, and construction for the McDonald's project. At a point in the future, after some discovery has been conducted, the Court may learn that the plaintiffs did not play a role in filing the applications at issue. However, the Court declines to make what is a factual finding, especially in light of the limited discovery and early stage of the litigation.

In any event, the parties have not provided, and the Court has not found, a case which holds that applying to a town planning board or similar entity for special use exception permits, site approval plans, or building permits is conduct protected by the First Amendment right to petition government for the redress of grievances. However, the Court has found cases in which courts have determined that the following analogous conduct is constitutionally protected: commencing Article 78 proceedings, attending public meetings and hearings of the Board of Trustees, the Planning Board and the Zoning Board of Appeals, and talking to the Building Inspector, *see Gagliardi,* 18 F.3d at 195; circulating a petition, testifying before the Planning Commission and writing letters to the editor as part of campaign against the granting of a permit, *see Christian Gospel Church, Inc. v. City and County of San Francisco,* 896 F.2d 1221, 1226 (9th Cir.1990); petitioning the government to declare a road in front of a neighboring landowner's home to be a public road that could be fenced off, *see Evers v. County of Custer,* 745 F.2d 1196 (9th Cir.1984); filing

an appeal of the City's zoning decision, *see R.S.S.W., Inc. v. City of Keego Harbor,* 18 F.Supp.2d 738, 747 (E.D.Mich.1998); petitioning for a zoning amendment, *see Gorman Towers, Inc. v. Bogoslavsky,* 626 F.2d 607, 614 (8th Cir.1980) (adopting district court's holding); complaining to the PBA and trying to secure the PBA's assistance in pursuing legal redress of grievances against the City, *see Fernandez v. City of Poughkeepsie,* 67 F.Supp.2d 222, 227 (S.D.N.Y.1999); appealing the denial of public assistance benefits by a prisoner on work release, *see Friedl v. City of New York,* 210 F.3d 79, 86 (2d Cir.2000); and writing letters to the town's Board of Selectmen that voice opposition to an application for a permit to sell hotdogs, *Wolocko v. Town of Ridgefield,* 2000 WL 565447 *5 (D.Conn. March 31, 2000). *But see WMX Technologies, Inc. v. Miller,* 197 F.3d 367, 372 (9th Cir.1999) (en banc) (holding that application by Waste Management of California, Inc. for major use permit is not equivalent to petition to the Government for redress of grievances under the First Amendment because it implicates neither the applicant's associational nor speech interests); *Brady v. Town of Colchester,* 863 F.2d 205, 217 (2d Cir.1988) (finding that appellants' act of renting property to the Borough was not protected speech under the First Amendment because the appellants rented for purely commercial, rather than political, reasons).

Given the similarity of the above-described protected conduct to the plaintiffs' activity, the Court finds that the plaintiffs' conduct in applying for approvals and permits regarding the McDonald's construction is protected by the First Amendment right to petition government for the redress of grievances. This finding is in accord with the Second Circuit's opinion that the right to petition government for redress of grievances is broader than the right of access to the "courts or other similar judicial forums." *See Franco,* 854 F.2d at 589

■ With regard to whether the complaint adequately alleges that the defendants were substantially motivated by the HBC's exercise of its right to petition the government, "[t]he ultimate question of retaliation involves a defendant's motive and intent, which are difficult to plead with specificity." *Gagliardi*, 18 F.3d at 195; *see Fernandez v. City of Poughkeepsie*, 67 F.Supp.2d 222, 227 (S.D.N.Y.1999). However, to survive a motion to dismiss a plaintiff's claims must be "'supported by specific and detailed factual allegations,' not stated 'in wholly conclusory terms.'" *Friedl*, 210 F.3d at 85–86 (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)). Thus, "[w]hile a bald and uncorroborated allegation of retaliation might prove inadequate to withstand a motion to dismiss, it is sufficient to allege facts from which a retaliatory intent on the part of the defendants reasonably may be inferred." *Gagliardi*, 18 F.3d at 195; *see Fernandez*, 67 F.Supp.2d at 227–28. A plaintiff can show retaliatory intent by establishing unequal treatment or an ongoing campaign of adverse action. *See, e.g., Gagliardi*, 18 F.3d at 195; *Housing Works*, 72 F.Supp.2d at 424–26. In addition, circumstantial evidence of retaliation may be found when defendants are aware that a plaintiff has engaged in protected speech. *See McCullough v. Wyandanch Union Free School Dist.*, 187 F.3d 272, 280 (2d Cir.1999) (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.1995)); *Housing Works*, 72 F.Supp.2d at 422–23.

■ The Court finds that the plaintiffs have explicitly and sufficiently alleged that the defendants denied their applications for permits in regard to the construction of the ambulatory surgery center in retaliation for this protected conduct. According to the complaint there is a clear causal chain: HBC applied for the permit and site approval; Duffy told HBC that "The McDonald's application will hurt the surgical center's application. If this application [McDonald's] was not here, you would have no problem getting the surgical cen-

ter. I do not want a McDonald's in Hampton Bays.... If McDonald's does get approval, I'll make sure that [the] trees remain in front of McDonald's blocking the view from Montauk Highway.... If you attempt to cut the trees down, I'll have you arrested;" Duffy sent a memo to all Planning Board members, listing additional requirements that HBC would have to meet before its application for a change of zone would be accepted; the Planning Board returned HBC's application for change of zone; the Town Board issued a six-month moratorium on the issuance of any zoning approvals; a member of the Town Board indicated that the moratorium's purpose was to stop the McDonald's construction; the Planning Board refused to consider McDonald's applications for approximately eight months; the Planning Board denied HBC's application for an exemption from the moratorium, and during the moratorium, HBC lost an opportunity to enter into a $17,000,000 lease with Stony Brook; the Building Department required McDonald's to resubmit its application for a construction permit; the Planning Board amended the local zoning law; the Planning Board denied McDonald's application for a construction permit based on the newly-enacted zoning law; and the Planning Board returned Phoenix's 1998 site plan application for the construction of a medical office building at 223 West Montauk Highway.

These allegations of retaliation are not conclusory but, rather, are sufficiently specific to state a claim. *See Friedl*, 210 F.3d at 87 (finding that plaintiff's allegations are sufficiently specific to state claim and listing the various allegations); *Gagliardi*, 18 F.3d at 195 (concluding that plaintiffs' retaliation claim was sufficient to survive defendants' motion to dismiss where plaintiffs' detailed allegations provided chronology of events from which an inference could be drawn that defendants' actions were motivated by plaintiffs' exercise of their First Amendment rights).

The Court notes that the parties strongly dispute which entity was responsible for denying the permits and applications as well as the reasons behind those denials. These issues are more appropriately resolved at trial and, in any event, after discovery has been concluded. Accordingly, the defendants' motion to dismiss the plaintiffs' First Amendment claim is denied.

## B. The Equal Protection Claim

■ To state a claim under the Equal Protection Clause, a plaintiff must allege that: (1) the person, compared with others similarly situated, was selectively treated; and (2) such selective treatment was based on impermissible considerations such as race, religion intent to inhibit or punish the exercise of constitutional rights, or malicious bad faith intent to injure a person. *See Crowley v. Courville*, 76 F.3d 47, 52–53 (2d Cir.1996); *Zahra v. Town of Southold*, 48 F.3d 674, 683–84 (2d Cir.1995); *LaTrieste Restaurant & Cabaret, Inc. v. Village of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994).

As to the first element of an equal protection cause of action, the plaintiff must adequately allege that it was similarly situated to other entities that were seeking an exemption from the six-month moratorium on zoning approvals but were nevertheless treated differently. The best explanation for determining whether other persons are "similarly situated" was set forth in *The Dartmouth Review v. Dartmouth College*, 889 F.2d 13 (1st Cir.1989), and previously cited by this Court in numerous other decisions, as follows:

> The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated. Much as the lawyer's art of distinguishing cases, the "relevant aspects" are those factual elements which determine whether reasoned analogy supports, or demands, a like result. Exact correlation is neither likely or necessary, but

the cases must be fair congeners. In other words, apples should be compared to apples.

*Dartmouth Review*, 889 F.2d at 19; *see Economic Opportunity Commission of Nassau County v. County of Nassau*, 106 F.Supp.2d 433, 439–40 (E.D.N.Y.2000); *Economic Opportunity Commission of Nassau County v. County of Nassau*, 47 F.Supp.2d 353, 370 (E.D.N.Y.1999); *Equus v. Town of Southampton*, 37 F.Supp.2d 582, 597–98 (E.D.N.Y.1999); *Kirschner v. Zoning Board of Appeals of Valley Stream*, 924 F.Supp. 385, 391 (E.D.N.Y. 1996).

■ Applying these standards, the Court finds that HBC has adequately alleged that it is similarly situated to Cat Cove but was treated differently. The amended complaint alleges that Cat Cove was a real estate developer who wanted to build a 90,000 square foot shopping center one and one-half miles from where HBC wanted to construct its ambulatory surgery center. When the Town Board imposed its six-month moratorium on zoning approvals, Cat Cove's application for approval to build was stayed, and HBC was prevented from applying to have its property re-zoned to a planned development district. Thus, both Cat Cove and HBC applied to the Town Board for an exemption from the six-month moratorium so that their respective petitions could be heard. The Town Board granted Cat Cove's application for an exemption on December 18, 1998, but denied HBC's application in January 1999. Given these facts, the Court finds that the amended complaint adequately alleges that HBC and Cat Cove were similarly situated, in that they were both real estate developers who applied for exemptions to the moratorium so that they could then petition the government for further zoning-related relief. Furthermore, the amended complaint states that HBC and Cat Cove were treated differently in that Cat Cove's application was granted, but HBC's was not.

The Court also finds that the amended complaint contains facts supporting an allegation of punishment for the exercise of constitutional rights. These allegations include Duffy's statements that he did not want a McDonald's in the Hampton Bays, and that he would grant an application regarding the ambulatory surgery center if HBC were not pursuing the McDonald's construction. The defendants' alleged punishment of the plaintiffs for the exercise of constitutional rights is also supported by the allegations of an ongoing campaign to delay and derail the plaintiffs' construction of the restaurant and the surgery center, which included: Duffy's promulgation of additional requirements that HBC had to meet before its application for a change of zone would be accepted; the Planning Board's decision to return HBC's application for a change of zone; the Building Department's decision requiring McDonald's to resubmit its application for a construction permit; the amendment's to the local zoning laws; the Planning Board's denial of McDonald's application for a construction permit based on the newly enacted zoning law; and the Planning Board's decision returning Phoenix's 1998 site plan application for the construction of a medical office building at 223 West Montauk Highway. Thus, the complaint contains sufficient allegations that the defendants punished the plaintiffs for the exercise of their constitutional rights.

■ However, the plaintiffs' equal protection claim fails because the assertions of punishment for the exercise of constitutional rights do not relate to the Town Board, which is the entity that is alleged to have treated the plaintiffs differently from a similarly situated entity. The amended complaint contends that Duffy, who is not alleged to be a member of the Town Board, said that the ambulatory surgery application would be granted if HBC were not trying to build a McDonald's. In addition, the plaintiffs do not contend that the Town Board made the decisions that delayed and denied the construction of the McDonald's and the ambulatory surgery center. Rather, the amended complaint asserts that the Planning Board, Duffy, and the Building Department were the individuals responsible for those decisions. Thus, the plaintiffs' equal protection claim is dismissed because they have failed to attribute the alleged punishment for the exercise of constitutional rights to the Town Board, whom they assert is the entity responsible for the differential treatment.

■ The plaintiffs' equal protection claim is not saved by allegations of a conspiracy, because the plaintiffs have failed to adequately plead a conspiracy. First, the amended complaint refers only to section 1983, and not to section 1985, the conspiracy component of the civil rights legislation. Thus, even at the outset, it is difficult to discern whether the plaintiffs actually intend to allege a conspiracy. Next, the amended complaint mentions the word "conspire," or derivations thereof, in connection with the equal protection claim. However, the plaintiffs do nothing more than to include the word in their amended complaint, and mere mention of that word is insufficient to allege a conspiracy under section 1985. Indeed, conclusory, vague, and general allegations of conspiracy do not survive a motion to dismiss. *See Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir.1993); *Zemsky v. City of New York*, 821 F.2d 148, 151 (2d Cir.1987). Furthermore, the plaintiffs did not plead facts that demonstrate that the Town Board entered into an agreement, tacit or otherwise, to violate a constitutional right. *See Dwares*, 985 F.2d at 100. Simply including the Town Board in the amended complaint, without more, will not establish a conspiracy, even under Rule 8(a)(2).

Accordingly, the plaintiffs have failed to adequately plead that the Town Board conspired with Duffy, the Planning Board, and the Building Department to violate the plaintiffs' constitutional rights. Therefore, punishment for the exercise of constitutional rights, which the plaintiffs pled with

respect to Duffy, the Planning Board, and the Building Department, cannot be attributed to the Town Board. As such, the defendants' motion to dismiss the plaintiffs' equal protection claim is granted, and that claim is dismissed.

## C. The Substantive Due Process Claim

"Substantive due process protects against government action that is arbitrary, conscience shocking, or oppressive in a constitutional sense, but not against a government action that is 'incorrect or ill-advised.'" *Kaluczky v. City of White Plains,* 57 F.3d 202, 211 (2d Cir.1995) (quoting *Lowrance v. Achtyl,* 20 F.3d 529, 538 (2d Cir.1994)). The Second Circuit set forth the standard for assessing a substantive due process claim in the context of land use regulation in *Walz v. Town of Smithtown,* 46 F.3d 162 (2d Cir.), *cert. denied,* 515 U.S. 1131, 115 S.Ct. 2557, 132 L.Ed.2d 810 (1995):

> When an unsuccessful applicant for a governmental permit claims that an official or regulatory body has violated due process, the framework for evaluating the claims in the well-developed property interest analysis, which has its origins in the Supreme Court's decision in *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The focus of the analysis is on the nature of the applicant's interest in the approval being sought, specifically whether the applicant has a clear entitlement to the approval sought from the government official or administrative body. *See, e.g., RRI Realty Corp. v. Incorporated Village of Southampton,* 870 F.2d 911 (2d Cir.) (analyzing whether applicant possessed property interest in building permit), *cert. denied,* 493 U.S. 893, 110 S.Ct. 240, 107 L.Ed.2d 191 (1989); *Sullivan v. Town of Salem,* 805 F.2d 81, 84–85 (2d Cir.1986) (analyzing whether applicant possessed property interest in certificate of occupancy); *Yale Auto Parts v. Johnson,* 758 F.2d

54, 58–60 (2d Cir.1985) (analyzing whether applicant possessed property interest in permit to use property as automobile junkyard).

*Walz,* 46 F.3d at 167–68.

Thus, in order to allege a property interest sufficient to support a substantive due process claim, the plaintiff must allege that it had a valid property interest to the benefit in question. *See Lisa's Party City, Inc. v. Town of Henrietta,* 185 F.3d 12, 17 (2d Cir.1999); *DLC Management Corp. v. Town of Hyde Park,* 163 F.3d 124, 130 (2d Cir.1998) *Crowley v. Courville,* 76 F.3d 47, 52 (2d Cir.1996). The key to determining the existence of a property interest is the extent to which the deciding authority may exercise discretion in reaching its decision rather than on the estimate of the likelihood of a certain decision. *See DLC Management,* 163 F.3d at 132–33; *Walz,* 46 F.3d at 168; *RRI Realty Corp.,* 870 F.2d at 918. If the governing body has discretion in deciding whether to issue the permit, the federal courts will not sit as a superseding body to local administrative agencies. *See Natale v. Town of Ridgefield,* 170 F.3d 258, 263 (2d Cir.1999); *Zahra v. Town of Southold,* 48 F.3d 674, 680 (2d Cir.1995). Indeed, when considering this issue, the federal court should be mindful not to become a zoning board of appeals and not to review nonconstitutional issues of land use determinations by local administrative agencies. *See Crowley,* 76 F.3d at 52; *Sullivan v. Town of Salem,* 805 F.2d 81, 82 (2d Cir.1986). If the Court finds that the plaintiffs had an adequate property interest, then the plaintiffs still must allege that the defendants acted in an arbitrary or irrational manner in depriving the plaintiffs of that interest. *See Lisa's Party City,* 185 F.3d at 17; *Natale,* 170 F.3d at 263.

Notably, the Second Circuit has instructed that the "entitlement" test be applied with "considerable rigor." *RRI Realty,* 870 F.2d at 918. Even if "objective observers would estimate that the probability of [obtaining the relief sought] was

extremely high, the opportunity of the local agency to deny issuance suffices to defeat the existence of a federally protected property interest." *Id.* at 918.

Before the Court applies these standards to the plaintiffs' due process claim, the Court first must determine where the plaintiffs' claim lies. The plaintiffs contend that the defendants deprived them of their substantive due process rights by arbitrarily denying land use permits. A review of the amended complaint reveals that the plaintiffs' applied for the following land use permits: (1) HBC's August 27, 1998, petition to the Town Board to change the zoning designation of its property to Planned Development District; (2) the June 17, 1999, application to the Building Department for a building permit for the construction of a McDonald's; and (3) Phoenix's October 24, 1998, reapplication for approval of the site plan at 223 West Montauk Highway. The Court finds that although the plaintiffs may have a property interest in the March 23, 1998, application to the Planning Board for a special exception use permit and for site approval to build the McDonald's, that application is not at issue here because the Planning Board granted it on June 10, 1999.

**1) Petition to rezone**

██ With regard to the August 27, 1998, petition to re-zone the HBC property to a PDD, the Court finds that the plaintiffs do not have a property interest. The Southampton Code provides that "[t]he Town Board may rezone . . . to a planned development district upon . . . written application of the landowner pursuant to the provisions of this Article and Article 16 of the New York State Town Law." Southampton Town Code [hereinafter "Town Code"] §§ 330–243. "A planned development district may be authorized where the Town Board finds that the development will be beneficial, compatible and harmonious with the surrounding land uses and not have a significant adverse impact upon the environment." Town Code § 330–245(G).

The inclusion of the word "may" in these two Code provisions indicates that the Town Board is not required to rezone property to a PDD upon submission of a completed application. Rather, the Town Board may approve an application if it determines that the proposed development comports with the purpose of the PDD legislation. *See* Town Code § 330–240(E)(1) (listing purposes of the PDD). In applying the broad purposes of legislation to an application and then reaching a conclusion based on that analysis, the Town Board was provided room to exercise its discretion. *See Vertical Broadcasting, Inc. v. Town of Southampton,* 84 F.Supp.2d 379, 393 (E.D.N.Y.2000) (concluding that plaintiff had no property interest where the Town Code granted the Town discretion to consider and reject applications for zoning variance).

In addition, section 330–244(C) requires that every application be referred to the Planning Board. "[I]t seems unlikely that such an elaborate mechanism would be required where there was no discretion in the governing body with respect to the issuance of the permit." *Equus Associates Ltd. v. Town of Southampton,* 975 F.Supp. 454, 460 (E.D.N.Y.1997). Thus, the Court finds that under the Southampton Town Code, the Town Board retains sufficient discretion with respect to rezoning property to PDD's to defeat the plaintiffs' substantive due process claim. *See Crowley,* 76 F.3d 47, 52 (2d Cir.1996) (finding that plaintiff had no property interest where regulations contained guiding principles for Town Board's exercise of authority); *see also, DLC Management,* 163 F.3d at 133.

**2) Application for the building permit**

With regard to the June 17, 1999, application for a building permit, the Court finds that, at this point in the litigation, the plaintiffs have a property interest in obtaining a building permit. Any person wishing to construct a building must obtain a building permit from the Building In-

spector. *See* Town Code § 123–9(A)(1). The Town Code does not explicitly set forth whether the Building Inspector must approve certain applications, whether he may deny an application, or the circumstances under which the Building Inspector will approve or deny an application. However, the Town Code does state that after receiving the application, the Building Inspector "shall examine the premises for which" the application has been received "for the purpose of ensuring compliance with laws, ordinances and regulations governing building construction", Town Code § 123–6(B); shall examine the application, as well as the plans, specifications and documents filed therewith, *see* Town Code § 123–10(A); shall refer the application to the Town Director of Natural Resources, who will determine whether an additional permit is necessary for construction in a Wetlands area, *see* Town Code § 123–10(B); and shall issue a building permit upon approval of the application, *see* Town Code § 123–10(C). "If the application, together with plans, specifications and other documents filed therewith, describes proposed work which does not conform to all of the requirements of the applicable building regulations, the building official shall disapprove the same." Town Code § 123–10(D). The Town Code further states that a submitted application shall include "[s]uch other information as may reasonably be required by the Building Inspector to establish compliance of the proposed work with the requirements of the applicable building laws, ordinances and regulations." Town Code § 123–9(B)(1)(g).

Given these provisions of the Town Code, the Court finds that the Building Inspector has very little discretion when deciding whether a permit should issue. Rather, the Town Code indicates that if the application meets all relevant regulations and ordinances, then the Building Inspector shall approve the application and issue the permit. The Court notes that later in the litigation, it may become

clear that the Building Inspector does exercise his discretion when he applies the relevant building ordinances and regulations to a particular application, in which case, the plaintiffs would not have a property interest in the building permit. But, at this early stage in the litigation, without information regarding the types of ordinances and regulations that are applicable to this case and the manner in which they are examined, the Court finds that the Building Inspector does not retain sufficient discretion to defeat the plaintiffs' substantive due process claim. *See DLC Management,* 163 F.3d at 132–33; *Walz,* 46 F.3d at 168; *RRI Realty Corp.,* 870 F.2d at 918.

Because the plaintiffs have alleged a property interest in the building permit, the Court must determine whether the plaintiffs have also adequately alleged that the denial of that permit was arbitrary or irrational. *See Lisa's Party City,* 185 F.3d at 17; *Natale,* 170 F.3d at 263. According to the amended complaint, the Building Inspector denied the permit because it did not comply with the newly enacted zoning amendment. The application's failure to meet the requirements of the zoning laws is certainly an appropriate reason to deny the building permit. However, the plaintiffs also allege that the Building Department intentionally delayed reviewing their application for a construction permit so that the Town Board could pass a new local law, amending the zoning regulations so that the erection of fast food restaurants in the area of the plaintiffs' property was no longer permitted. Taking all of the plaintiffs' allegations together and viewing them in the light most favorable to the plaintiff, the Court finds that the plaintiffs have stated an arbitrary denial and a substantive due process claim with respect to the denial of the building permit.

### 3) The site plan application

The Court finds that the plaintiffs do not have a property interest in the site plan approval for the medical arts building

at 223 West Montauk Highway. When determining whether to approve a site plan, the Planning Board does not simply apply technical requirements of the local regulations and ordinances to a site plan in a mechanical fashion to reach a predictable result. Rather, the Planning Board must also decide whether the plan application complies with the purpose of the Zoning Code. *See* Town Code § 330–184(E). In reaching this conclusion, the Planning Board must consider the public health, safety and welfare as well as the comfort and convenience of the public in general. *See* Town Code § 330–182.

In addition, the Planning Board's decision is based, in part, on the opinions of various municipal agencies, including, but not limited to, the fire department and the architectural review department. *See* Town Code § 330–184(C). Furthermore, the Planning Board may conduct a public hearing on the site plan application if it deems one to be necessary. *See* Town Code § 330–184(D). Given the various entities that advise the Planning Board, and the fact that their decision must comport not simply with the mechanics of the Zoning Code, but also with its spirit, the Court finds that the Town Code affords the Planning Board wide discretion in approving or disapproving site plans. *See Equus Assocs. Ltd.,* 975 F.Supp. at 460 (finding that where elaborate referring mechanism is built into the statute, the government entity likely has discretion). Accordingly, the Court finds that the Planning Board retains sufficient discretion to withstand the plaintiff's substantive due process challenge. *See generally DLC Management,* 163 F.3d at 133–34 (holding that individual applying for site approval plan from Town of East Hampton did not allege property interest sufficient to support substantive due process claim).

Thus, the defendants' motion to dismiss the substantive due process claim with respect to the petition to rezone and the application for site plan approval is granted. However, the plaintiffs have stated a substantive due process claim with respect to the building permit, and the defendants' motion to dismiss that portion of the substantive due process claim is denied.

**D. Procedural Due Process**

█ The plaintiffs also contend that the defendants violated their procedural due process rights. However, as the Second Circuit recognized in *Gagliardi v. Village of Pawling,* 18 F.3d 188 (2d Cir.1994), complaints regarding lack of notice and failure to comply with municipal requirements are not actionable where there are no protectable rights at stake. *Id.* at 193 (citing *Azizi v. Thornburgh,* 908 F.2d 1130, 1134 (2d Cir.1990)). Accordingly, because the Court has determined that the plaintiffs lack a sufficient property interest in the rezoning of property to a PDD and in the site plan approval, the plaintiffs procedural due process claims, with respect to those two applications, cannot be maintained.

However, because the Court has found that the plaintiffs have a property interest in the building permit at this stage of the litigation, the Court now addresses whether the plaintiffs have stated a procedural due process claim with respect to that interest. The amended complaint alleges that the defendants deprived the plaintiffs of their right to the building permit without providing the plaintiffs with a reasonable opportunity to contest the government's actions, in that the New York courts do not provide a judicial mechanism for challenging abuses of governmental power, such as the ones alleged by the plaintiffs.

█ "In order to establish a procedural due process violation, a plaintiff must prove that he or she was deprived of 'an opportunity ... granted at a meaningful time and in a meaningful manner' for [a] hearing appropriate to the nature of the case.'" *Brady v. Town of Colchester,* 863 F.2d 205, 211 (2d Cir.1988) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971)).

Here, the plaintiffs sought meaningful review of the building inspector's decision in the state judicial system. *See id.* Indeed, the plaintiffs initiated an Article 78 proceeding in state court, and succeeded in reversing the building inspector's decision. *See In re Crystal Pond Homes, Inc. v. Prior,* 267 A.D.2d 383, 384, 701 N.Y.S.2d 102 (2d Dept.1999) (requiring final determination from zoning board of appeals before Supreme Court will have jurisdiction in CPLR Article 78 proceeding); *Sevenson Hotel,* 262 A.D.2d at 958, 692 N.Y.S.2d 880 (finding that property owners must seek final determination from zoning board of appeals before they can pursue Article 78 proceeding). The availability of such recourse, as a matter of law, precludes finding that the plaintiffs have stated a claim for the denial of their procedural due process rights. *See id.* Thus, the plaintiffs' procedural due process claim is dismissed in its entirety.

## E. Defendants' Claims of Immunity

Defendants Jane and John Doe # 's 11–15 move to dismiss the amended complaint as against them on the ground of absolute immunity. In addition, all of the individual defendants move to dismiss the amended complaint on the basis of qualified immunity. Initially, the Court notes that although the defendants' motion is based on affirmative defenses, they are reviewable on a motion to dismiss. *See Richmond, Fredericksburg & Potomac R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir.1993) (citing 5A Wright & Miller, Federal Practice and Procedure § 1357 at 348–49 (2d ed.1990)). However, the Court finds that neither the plaintiffs nor the defendants have provided the Court with sufficient detail regarding the defendants' alleged conduct for the Court to properly decide the issue at this time. Accordingly, the defendants' motion to dismiss on the basis of immunity is denied with leave to renew at the completion of discovery.

## F. The Plaintiffs' State Law Claims

### 1) Prima facie tort

As a second claim for relief, the plaintiffs assert a prima facie tort, stating that "the defendants committed acts which caused damages to HBC … solely for the purpose of inflicting harm upon HBC." The elements of prima facie tort are (1) intentional infliction of harm, (2) which results in special damages, (3) without any excuse or justification, (4) by an act or series of acts that would otherwise be lawful. *See Burns Jackson Miller Summit & Spitzer v. Lindner,* 59 N.Y.2d 314, 332, 464 N.Y.S.2d 712, 451 N.E.2d 459 (1983). In order to recover for prima facie tort, the plaintiff must allege that:

> malevolence is the sole motive for [the] defendant's otherwise lawful act or … unless [the] defendant acts from disinterested malevolence … by which is meant that the genesis which will make a lawful act unlawful must be a malicious one unmixed with any other and exclusively directed to injury and damage of another.

*Id.* at 332, 464 N.Y.S.2d 712, 451 N.E.2d 459. Where the plaintiff merely pleads intentional and malicious action, but not that the defendant's "sole motivation" was "disinterested malevolence," the complaint will be dismissed. *See id.; see also Chen v. United States,* 854 F.2d 622, 629 (2d Cir.1988); *Rabideau v. Albany Medical Ctr. Hosp.,* 195 A.D.2d 923, 600 N.Y.S.2d 825, 827 (3d Dept.1993). Where there are other motives, such as profit, self-interest, or business advantage, there is no recovery under the doctrine of prima facie tort. *See Squire Records, Inc. v. Vanguard Recording Society, Inc.,* 25 A.D.2d 190, 191–92, 268 N.Y.S.2d 251, 253–54 (1st Dept. 1966); *see also Marcella v. A.R.P. Films, Inc.,* 778 F.2d 112, 118 (2d Cir.1985).

Applying these standards, the Court dismisses the plaintiff's claim for prima facie tort. The plaintiffs fail to allege that the defendants' conduct was otherwise lawful. In fact, the plaintiffs allege

that the defendants' conduct violated their civil rights. Accordingly, the plaintiffs have failed to state a claim for prima facie tort, and the defendant's motion to dismiss this cause of action pursuant to Rule 12(b)(6) is granted.

### 2) Tortious interference with a contract

 Tortious interference with contract claim under New York law comprises four elements: (1) a valid contract between plaintiff and a third party, (2) defendant's knowledge of the contract, (3) defendant's "intentional inducement" of the third party to breach the contract, and (4) damages. *See Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 94, 595 N.Y.S.2d 931, 612 N.E.2d 289 (1993); *see also Invamed, Inc. v. Barr Laboratories, Inc.*, 22 F.Supp.2d 210, 224 (S.D.N.Y.1998). The plaintiffs have not adequately pled tortious interference with a contract because they fail to allege that they had a valid contract with Stony Brook. *see Kronos*, 81 N.Y.2d at 94, 595 N.Y.S.2d 931, 612 N.E.2d 289; *see also Querry v. Messar*, 14 F.Supp.2d 437, 452 (S.D.N.Y.1998) (holding that where plaintiff failed to allege existence of a valid contract, claim for tortious interference with contract failed). Indeed, they state quite the opposite, namely that "a lease agreement between Stony Brook and HBC would have been formed" had it not been for the defendants' conduct (*see* Amended Complaint ¶ 363). Thus, the Court grants defendants' motion to dismiss the third claim for relief based on tortious interference with a contract.

### G. The Motions for Sanctions

The defendants claim that prior to filing the amended complaint, the plaintiffs' attorney knew or should have known that the allegations contained in it are false. In particular, the defendants allege that, at the time he filed the amended complaint, counsel knew that the defendants were not responsible for the plaintiffs' loss of the Stony Brook contract because counsel was aware that: (1) the DOH had extended the time in which the plaintiffs begin building the ambulatory surgery center from December 22, 1998, to April 1, 1999, and again to April 30, 2001; (2) on February 5, 1999, HBC withdrew its application to have its property rezoned to PDD; and (3) on that same date, HBC withdrew its application for an exemption from the moratorium. The defendants also argue that the claims regarding Phoenix are frivolous because: (1) the two real estate developers are tenuously linked, and Phoenix could not suffer injury from an alleged retaliation against HBC; (2) Phoenix did not suffer any injury because it's application was not denied but rather was found to be incomplete; and (3) the Town Board did not deny an application it had granted two years earlier.

The plaintiffs oppose the defendants' motion for sanctions and cross-move for sanctions on the ground that the defendants' motion for sanctions is patently void of merit and was filed for the purpose of harassing the plaintiffs and forcing them to incur unnecessary litigation expenses.

 In support of their motion, the defendants rely on Rule 11(b), 28 U.S.C. § 1927, and the Court's inherent power, and the plaintiffs rely only on Section 1927 and the Court's inherent power. "An attorney who signs a pleading, motion, or other paper certifies that she has made a reasonable inquiry and that to the best of her knowledge, information, and belief, (1) the pleading is not filed for any improper purpose; (2) any claims or defenses have support in existing law or in a non-frivolous argument for a change in existing law; (3) there is current or likely future evidentiary support for all evidentiary contentions; and (4) denials are warranted either by the evidence 'or, if specifically so identified, are reasonably based on a lack of information or belief.'" *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 88 (2d Cir.1998) (quoting Fed.R.Civ.P. 11). Where, as here, the district court must determine whether to impose sanctions

based on the lack of evidentiary support for an attorney's factual contentions, the district court "must direct its inquiry at ascertaining the attorney's knowledge and conduct at the time the pleading in question was signed." *Savino*, 164 F.3d at 88 (citing *Healey v. Chelsea Resources, Ltd.*, 947 F.2d 611, 625 (2d Cir.1991)). The test is an objective one that does not require a finding of bad faith on the part of the attorney. *See Mover's & Warehousemen's Ass'n v. Long Island Moving & Storage Ass'n Inc.*, 1999 WL 1243054 *7 (E.D.N.Y. 1999). Whether to impose sanctions is matter left to the discretion of this Court. *See Savino*, 164 F.3d at 88 (citing *Caisse Nationale de Credit Agricole–CNCA v. Valcorp, Inc.*, 28 F.3d 259, 264 (2d Cir. 1994)).

■■■ The Court cannot say that it was objectively unreasonable for the plaintiffs to file the amended complaint in this action. Even if plaintiffs' counsel knew that DOH had granted Stony Brook an extension of time, counsel still could argue that the defendants' conduct caused the plaintiffs to lose the Stony Brook contract. According to the plaintiffs, Stony Brook could have received its extended certificate of need from DOH and transferred it to another property because the plaintiffs had been unable to receive an exemption from the moratorium. Put differently, Stony Brook's receipt of an extension does not compel the conclusion that defendants are absolved of liability, because plaintiffs' attorney has put forth alternative theories of liability. Similarly, the plaintiffs may have withdrawn their application for an exemption and their petition for rezoning after Stony Brook informed them that it was looking to construct its ambulatory surgery center on other property. Thus, even if counsel was aware of the DOH extension and the withdrawn applications, he still could make the claims he did in the amended complaint. *See Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986), *cert. denied*, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987) (holding that

court must "resolve all doubts in favor of the signer," when evaluating Rule 11 motion). The Court also finds that the amended complaint contains evidentiary support for the plaintiffs' claims regarding Phoenix. The defendants' arguments to the contrary are fact-based, contested assertions about the ultimate success of the plaintiffs' claims, and thus are more properly brought in a motion for summary judgment or during the trial. Whether the plaintiffs will prevail on their Phoenix claims is not a factor that the Court considers when deciding whether to impose Rule 11 sanctions. *See Mover's & Warehousemen's Ass'n*, 1999 WL 1243054 *7. Thus, defendants' motion for sanctions pursuant to Rule 11 is denied.

Section 1927 of Title 28 of the United States Code authorizes the courts to sanction an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. "An award of sanctions pursuant to section 1927 must be accompanied by a finding of bad faith," *MacDraw, Inc. v. CIT Group Equip. Fin. Inc.*, 73 F.3d 1253, 1261 (2d Cir.1996); *see United States v. International Brotherhood of Teamsters*, 948 F.2d 1338, 1345 (2d Cir.1991), and thus requires a stronger showing than Rule 11. *See MacDraw, Inc.*, 73 F.3d at 1261. Similarly, an award of sanctions under the Court's "inherent power" requires the defendants to present "clear evidence that the challenged actions are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes." *Oliveri*, 803 F.2d at 1272; *see Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir.2000). "Thus, 'to impose sanctions under either authority, the trial court must find clear evidence that (1) the offending party's claims were entirely meritless, and (2) the party acted for improper purposes.'" *Revson*, 221 F.3d at 78 (quoting *Agee v. Paramount Communications, Inc.*, 114 F.3d 395, 398 (2d Cir.1997)). Applying these standards to the parties' conduct and submissions thus far in the litigation, the Court declines to

impose sanctions based on either section 1927 or its inherent power.

### III. *CONCLUSION*

Having reviewed the parties' submissions and afforded them the opportunity to present oral argument, it is hereby

**ORDERED,** that the defendants' motion to dismiss the plaintiffs' First Amendment claim is **DENIED,** and it is further

**ORDERED,** that the defendants' motion to dismiss the plaintiffs' Equal Protection claim is **GRANTED,** and it is further

**ORDERED,** that the defendants' motion to dismiss the plaintiffs' substantive due process claim is **GRANTED** with respect to the plaintiffs' petition to rezone their property and the plaintiffs' application for site plan approval, and it is further

**ORDERED,** that the defendant's motion to dismiss the plaintiffs' substantive due process claim is **DENIED** with respect to the plaintiffs' application for a construction permit, and it is further

**ORDERED,** that the defendants' motion to dismiss the plaintiffs' procedural due process claims is **GRANTED,** and it is further

**ORDERED,** that the defendants' motion to dismiss the plaintiffs' claim for prima facie tort is **GRANTED,** and it is further

**ORDERED,** that the defendants' motion to dismiss the plaintiffs' claim for tortious interference with a contract is **GRANTED,** and it is further

**ORDERED,** that both parties' motions for the imposition of sanctions are **DENIED,** it is further

**ORDERED,** that the defendants request for leave to file an answer within thirty days of January 25, 2001, is **GRANTED.**

**SO ORDERED.**